**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ARISTOTLE INTERNATIONAL, INC.<br>205 PENNSYLVANIA AVENUE, SE<br>WASHINGTON, DC 20003<br><br>Plaintiff<br><br>                                                v.<br><br>NGP SOFTWARE, INC.<br>5305 CONNECTICUT AVENUE, NW<br>WASHINGTON, DC 20015<br>**SERVE:**<br>     Nathaniel G. Pearlman<br>     5440 Nevada Avenue, N.W.<br>     Washington, D.C. 20015<br><br>Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) CIVIL ACTION NO.:_____<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

Plaintiff, Aristotle International, Inc. ("Aristotle"), by its attorneys, alleges as follows for its Complaint against Defendant NGP Software, Inc. ("NGP").

## SUMMARY

This is an action for unfair competition and unjust enrichment, for damages, and for injunctive relief to deprive Defendant NGP of the continuing fruits of its misconduct.

## THE PARTIES

1. Plaintiff Aristotle is a Delaware corporation with its principal place of business in the District of Columbia at 205 Pennsylvania Avenue, SE, Washington, DC 20003

2. Aristotle is the largest non-partisan provider of political software products and related services ("Political Software") for the nationwide political, campaign, and grassroots organization marketplace, which includes, *inter alia,* elected officials, candidates, political action committees, political party organizations, trade associations, corporations, and other entities required to report political fundraising contributions and expenditures (together, "political marketplace").

3. Defendant NGP is a District of Columbia corporation with its principal place of business in the District of Columbia at 5305 Connecticut Avenue, NW, Washington, DC 20015.

4. The owner and registered agent of Defendant is Nathaniel G. Pearlman, who resides at 5440 Nevada Avenue, NW, Washington, DC 20015

5. Defendant NGP is a provider of Political Software for the political marketplace. The parties compete directly for the sale of Political Software in the political marketplace.

**JURISDICTION AND VENUE**

6. This court has subject matter jurisdiction under 28 U.S.C. §1331 and venue is appropriate in this court under 28 U.S.C §1391(b).

**THE CONTROVERSY BETWEEN THE PARTIES**

7. The political marketplace for Political Software is highly competitive.

8. Each sale of Political Software has a value of approximately $12,000 to $24,000 to the seller, on average.

9. The parties often compete head-to-head for the sale of Political Software.

*Defendant's Advertising of Its Purported Honesty, Integrity, Ethics, and Partisan Efforts Solely on Behalf of Democrats*

10. Defendant has undertaken a relentless marketing and promotion campaign to capture the Democratic-allied portion of the political marketplace by claiming that NGP provides its products and services "solely to Democrats and their allies", that NGP is an "ethical" company based on the core principles of "honesty and integrity", and similar claims of that nature.

11. Defendant's marketing and promotions are designed to create the impression that its exclusive "Democratic" credentials are pure and unimpeachable; that Defendant is loyal, honest, ethical and trustworthy; that Defendant does no business with those who are not in the camp of Democrats and their allies; that Defendant necessarily works harder for its customers because its only goal is the success of Democrats and their allies; that NGP is on a "mission to help only Democrats"; that aiding anyone not aligned with the Democratic agenda would be anathema to Defendant; and that, accordingly, Defendant should be rewarded with business from Democrats and their allies.

12. Defendant undertakes its marketing and promotion campaign through, *inter alia*, statements published at NGP's website; statements to the

3

press; articles posted at its website; pronouncements by Pearlman at a web log linked to Defendant's website; speeches and public appearances; information distributed at conferences; Internet advertisements on other websites; email, fax, and oral sales pitches; and other marketing materials and newsletters, both offline and online.

13. NGP's marketing and promotion campaign as to its alleged honesty, integrity, and exclusive loyalty to the side of Democrats and their allies, includes the following outright claims:

- "NGP Software, Inc. works solely with Democrats and their allies" [NGP website, multiple times]

- *"[A] rare example of a partisan firm in a technical niche"* [NGP website, multiple times]

- *"We make it very clear we only work with one party."* [*Wall Street Journal* article, posted at NGP website]

- *"**Why do people use NGP**? Because they **TRUST** us – we are **PARTISAN** and work only for Democrats and their allies. We do not market our clients' data. We understand discretion; we tell the truth to those with whom we work."* [NGP website]

- *"**EXHORTATION**: Help right side of the force. It would be easy to sell to the other side, or form a shadow company to do so, but we have worked only for Democrats are [sic] their allies. That feels good. And I think we have made some difference."* [Pearlman web log]

4

- *"[Pearlman] formed NGP in 1997 with a mission to help only Democrats".* [*Wall Street Journal* article, posted at NGP website]

- *"NGP operates according to our core principles: …honesty and integrity…"* [NGP website]

- **EXHORTATION**: *Be honorable in career. [This means] something very different to me than just helping the right side of the force. It mean[s] doing business honestly, making our way a sharp contrast with others in the market who in my view were less ethical. …It mean[s] not just doing things for the money".* [Pearlman web log]

- *NGP Software, Inc. is a political technology consulting firm serving only Democrats and their allies"* [NGP website]

- *"There is something in me highly resistant to self-promotion and marketing….I see this character trait of mine as a positive when I view it as a discomfort with the egocentric, the inauthentic, or the affected."*

- *"I have run a growing partisan political software company for more than eight years now"* [Pearlman web log]

- *"[P]artisanship helps make us a better business"* [Pearlman web log]

- *"And we like the fact that they work only for Democrats"* [Testimonial, NGP website]

14.  In addition to express claims of the type set forth in paragraph 13 concerning NGP's purported honesty, integrity, and exclusive effort and loyalty solely on behalf of Democrats and their allies, NGP makes

numerous claims that, in context and by necessary implication, mean the same thing. These include:

- *"NGP Software seeks to passionately deliver political technology and support to Democrats and our allies"* [NGP website]

- *"NGP seeks to be the responsible, dedicated partners of our clients and our common goal: Victorious Democrats."* [NGP website]

- *"Serious Software for Serious Democrats"* [NGP marketing document]

- *"We've been serving Democrats and their allies for eight years now"* [NGP website]

- *"NGP Software, Inc. is a Democratic political technology firm that has been working hard for our side since before Democrats were blue"* [Internet advertisement]

- *"My identification with Robin Hood fit with my emerging opinions about politics in the United States. Democrats, it was clear, also identified with the working and lower classes and tried to redress income inequalities."* [Pearlman web log]

- ***"NGP Software Inc. revises web site:** 'My staff persuaded me it was time to switch to a blue color scheme in honor of our service to Democrats…' said President Nathaniel Pearlman"*. [NGP Website]

15. Upon information and belief, NGP has made and continues to make repeated assertions similar to those described in paragraphs 10-14 hereof, in all forms of Defendant's marketing and promotion.

6

16. Upon information and belief, Defendant believes that its mantra of honesty, integrity, and Democrat-only loyalty is a highly successful marketing technique that has helped and continues to help it to take business away from non-partisan direct competitors such as Plaintiff Aristotle.

17. Defendant has posted an article at its website stating that its partisan approach "is helping them take market share away from the industry leader, Aristotle International, Inc., which sells to both sides of the aisle."

18. Defendant has devoted a significant amount of its promotional efforts and resources to create the impression that Defendant tells its customers the truth, is honest, and would never provide Political Software to, or engage in business ventures with, anyone but Democrats and their allies.

19. Defendant's marketing and promotion to persuade customers of its integrity, honesty, and Democrat-only position is a sham; the foregoing marketing claims and statements of Defendant are false literally and by necessary implication in context.

20. Upon information and belief, Defendant has secretly entered into a joint marketing venture with another Political Software provider so that Defendant can profit from sales of its Political Software to Republican allies, Republican-leaning organizations, and other organizations

7

advocating positions that fundamentally contradict those of Defendant's other customers (together, "traditional Republican allies").

21. Upon information and belief, under this surreptitious joint marketing venture, Defendant's Political Software may be marketed and sold to traditional Republican allies, and Defendant shares the profits.

22. Upon information and belief, Defendant also supports the Political Software sold through this secret venture by, *inter alia*, training the joint venture partner's support staff, responding to technical support inquiries, providing software updates, providing server space to traditional Republican allies, approving marketing, sharing customer leads, and other efforts.

23. Upon information and belief, Defendant is aware that participation in this venture and its support for traditional Republican allies undermines and renders false all of the marketing as to Defendant's honesty to its customers, integrity, and Democrat-only posture.

24. Upon information and belief, Defendant has been involved in this surreptitious joint arrangement for more than 6 months.

25. Upon information and belief, Defendant has made efforts to conceal from its customers and the public this joint business arrangement and its efforts to sell Political Software to entities other than Democrats and their allies.

26. Upon information and belief, such concealment efforts include maintaining secrecy about the arrangement, encouraging its co-

venturer to conceal the origin and source of Defendant's Political Software, altering Defendant's Political Software to hide its origin and source, and other efforts.

*Defendant's Illegal Operation of Business at 5305 Connecticut Avenue, NW in Washington, DC*

27. Upon information and belief, Defendant also has taken affirmative steps to conceal that, for a period of at least three years, Defendant has illegally operated its business out of a residence at 5305 Connecticut Avenue, in Northwest Washington DC.

28. Defendant's website has listed its address at 5505 Connecticut Avenue in Northwest Washington DC in order to conceal the illegal operation of the business in the different location. That listed address is a UPS store.

29. To perpetuate this subterfuge, Defendant also has placed on its website a picture of an office building doctored to appear that it is the headquarters of "NGP Software, Inc.", when it is not.

30. Upon information and belief, the District of Columbia government has found Defendant to be operating its business illegally at 5305 Connecticut Avenue, has fined Defendant, and has directed Defendant to discontinue such illegal activity.

31. Upon information and belief, Defendant has known for years that its operation at 5305 Connecticut Avenue was illegal, and has

9

misrepresented to others -- including mortgage lenders and the government -- the nature of the property usage.

32. Upon information and belief, Defendant's purpose in misrepresenting the nature of the property usage was, *inter alia,* to evade taxes, to receive illegal tax reductions and mortgage deductions, and to create a false impression as to the quality and professionalism of its services.

33. Defendant's knowingly illegal operation of its business and related misrepresentations concerning the nature of the property usage at 5305 Connecticut Avenue also render false all of Defendant's advertising as to its honesty, integrity, ethics, and words to similar effect.

*Defendant's Non-Partisan "Political Spam" Venture*

34. Upon information and belief, Defendant has entered into a business venture in cooperation with other entities to promote the sale of 25 million voter email addresses for unsolicited email communications ("spam").

35. Defendant's website has described these email addresses as "opt-in", when, upon information and belief, they are not.

36. Upon information and belief, the purpose of the co-venture is to sell email addresses to anyone, including Republicans and their allies, for political purposes, regardless of the purchaser's party affiliation or alliance.

37. Defendant's participation and cooperation in this arrangement also renders false Defendant's claims that its business efforts and goals are honest, ethical, and solely for Democrats and their allies.

**COUNT I -- Unfair Competition by False Advertising (Lanham Act)**

38. Plaintiff hereby incorporates by reference the allegations of Paragraphs 1-37 hereof as if the same were fully restated and set forth herein.

39. Defendant's advertising and promotional claims of honesty, integrity, and support only for Democrats and their allies are false, deceptive, and misleading, literally and by necessary implication in the context in which they are made, and actually deceive or have the tendency to deceive a substantial segment of customers and potential customers.

40. Individually and in the aggregate, the false, misleading, or deceptive portions of Defendant's advertising and promotions were and are material and likely to influence buying decisions.

41. Defendants caused the falsely advertised Political Software to enter interstate commerce.

42. Plaintiff has been and is likely to be injured either by direct diversion of sales to Defendant, customer confusion, or by lessening the acceptability of Plaintiff or its Political Software in the view of the buying public.

11

43. Upon information and belief, Defendant's marketing activities have caused actual consumer confusion and have resulted and will result in actual injury to Plaintiff by diversion of trade.

44. Upon information and belief, Defendant's false advertising has distorted the market, caused confusion, and otherwise injured Plaintiff.

45. Defendant has been and continues to be aware that its advertising and promotions are false, unfair and deceptive; such advertising and promotions are willful, in bad faith, deliberately false, intentionally set forth to deceive the public, and egregious in light of the advertising culture of the marketplace in which the parties compete.

Wherefore, on Count I, Plaintiff prays for judgment as follows:

    A. Permanently enjoining Defendant from advertising, marketing or promoting itself by stating or implying that Defendant is "honest", "ethical", "truthful", "loyal", "trustworthy, possesses "integrity", or any similar terminology to that effect;

    B. Permanently enjoining Defendant from advertising, marketing or promoting itself by stating or implying that it works solely for Democrats and their allies, is partisan, does not provide software or services to anyone but Democrats and their allies, or any similar terminology to that effect;

    C. Permanently enjoining Defendant from participating in any business ventures that are not solely on behalf of Democrats or

  their allies, and discontinuing all support therefor and all profit therefrom;

D. Requiring Defendant to issue corrective advertising sufficient to correct the impression Defendant has sought to create that it is "honest", "ethical", "truthful", "loyal", "trustworthy, possesses "integrity", or any similar terminology to that effect, and fully disclosing the extent of Defendant's deceptions;

E. Requiring Defendant to issue corrective advertising sufficient to correct the impression Defendant has sought to create that it works solely for Democrats and their allies, is partisan, or does not provide software or services to anyone but Democrats and their allies, or any similar terminology to that effect, and fully disclosing the extent of Defendant's deceptions;

F. Awarding Plaintiff Defendant's profits on all sales obtained as a result of Defendant's false advertising;

G. Awarding Plaintiff all marketplace damages, including lost profits, sustained by Plaintiff as a result of Defendant's false advertising, trebled;

H. Awarding Plaintiff its attorneys fees, expenses, and costs incurred in connection with this count; and

I. Granting such other and further relief as the Court deems just and proper, including damages of not less than $100,000.00.

**COUNT II -- Unjust Enrichment**

46. Plaintiff hereby incorporates by reference the allegations of Paragraphs 1-45 hereof as if the same were fully restated and set forth herein.

47. Defendant has been unjustly enriched as a result of the misrepresentations in its false and misleading advertising.

48. It is grossly inequitable for Defendant to retain the profits on sales of its Political Software that result from its false and misleading advertising.

49. In view of the competitive benefits accruing to Defendant from falsely asserting its honesty and exclusive work only for Democrats and their allies, it also is grossly inequitable for Defendant to retain any profits from sales of its Political Software through a secret intermediary to those who are not Democrats or their allies.

Wherefore, on Count II, Plaintiff prays for judgment as follows:

A. Awarding Plaintiff Defendant's profits on all sales to Democrats or their allies, obtained as a result of Defendant's false advertising;

B. Awarding Plaintiff Defendant's profits on all sales of Political Software through a secret intermediary to those who are not Democrats or their allies;

C. Awarding Plaintiff its attorneys fees, expenses, and costs incurred in connection with this count; and

    D.      Granting such other and further relief as the Court deems just and proper, including an award to Plaintiff of not less than $100,000.

_____
Robert L. Bredhoff, Esq., #338103
David U. Fierst, Esq., #912899
Stein, Mitchell & Mezines L.L.P.
1100 Connecticut Avenue, N.W.
Washington, DC 20036
Phone: (202) 737-7777
Fax: (202) 296-8312 (fax)
RBredhoff@steinmitchell.com
DFierst@steinmitchell.com
Attorneys for Plaintiff

## **JURY DEMAND**

Plaintiff demands a trial by jury of all issues.

_____
Robert L. Bredhoff