IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ARISTOTLE INTERNATIONAL, INC. | ) | |
| | ) | |
|     Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No.1:05CV01700 |
| | ) | |
| NGP SOFTWARE, INC. | ) | |
| | ) | |
|     Defendant | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT NGP SOFTWARE INC.'S MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS FROM ARISTOTLE**

Plaintiff Aristotle International, Inc. ("Aristotle") hereby opposes Defendant NGP Software Inc.'s ("NGP's") Motion to Compel the Production of Documents from Aristotle.

I. **INTRODUCTION**

A. **Nature of the Case**

The Lanham Act, 15 U.S.C §1125(a)(1), provides:

> Any person who, on or in connection with any goods or services…uses in commerce any word [or] term…which in commercial advertising or promotion misrepresents the nature, characteristics, [or] qualities…of his or her or another person's goods, services or commercial activities, shall be liable in any civil action by any person who believes that he or she is or is likely to be damaged by such act.

The Act permits the Court to enjoin a company's false advertising about the nature of its "commercial activities", which are distinct from promotions concerning its "goods and services."[1] This distinction exists because "[t]here can be little doubt that products are often

---

[1] The Lanham Act was amended in 1988 to include coverage of statements about "commercial activities." Prior to 1988, this provision of the Lanham Act only covered statements about

marketed and purchased not only on the basis of their inherent utility, but also for the images they project and the values they promote." *See Proctor & Gamble*, 222 F.3d 1262, 1272-73 (10th Cir. 2000)(Granting Lanham Act injunction to prevent false advertising concerning "commercial activities" that "do not solely involve the provision of services or the production of goods".)

Plaintiff Aristotle and Defendant NGP compete in the sale of political software to Democrats and their allies.[2] Plaintiff is a non-partisan provider of political software to all candidates, parties and their allies. Complaint at ¶2. Defendant continuously advertises itself as a "partisan" firm serving "only Democrats and their allies". *See* Amended Complaint at ¶12 and 13; Answer at ¶12 and 13.

The competitive advantages that NGP has enjoyed as a result of its partisanship claims have been the subject of national media coverage. On August 31, 2004, the *Wall Street Journal* published a feature article titled, <u>Some Campaign Firms Work Only One Side of the Aisle; Vendors Find Partisanship Builds Trust with Clients, Provides Competitive Edge</u>.[3] *See* Exhibit 2. Defendant immediately posted the article at its website (*see* Exhibit 4) adopting it as part of its advertising.[4]

Plaintiff's Amended Complaint alleges that Defendant's claims of serving only Democrats and their allies (claims that concern the nature of Defendant's "commercial activities") are false, material, and likely to damage Plaintiff. The Amended Complaint does not

---

"goods and services". *See* Trademark Law Revision Act of 1988, Pub. L. No. 100-667, Title I, § 132, 102 Stat. 3935.

[2] Defendant's sales representative James Noble testified that Aristotle is one of NGP's competitors. *See* Noble deposition at 28-29, attached hereto as Exhibit 1.

[3] The *Wall Street Journal Online* version of the headline reads: *Partisanship Sets Apart Savvy Campaign Vendors*. *See* Exhibit 3.

[4] *See, e.g., Gordon & Breach Science Publishers Ltd. v. American Institute of Physics and Amer. Physical Society*, 859 F.Supp. 1521, 1544 (S.D.N.Y.1994)(posting article for the purpose of influencing consumers is commercial speech, and is subject to Lanham Act).

address Defendant's claims about the nature of any of its "goods or services". Plaintiff only seeks injunctive relief, not damages.

## II.  APPLICABLE LAW

A brief summary of the applicable law and standards of proof provides further context for consideration of Defendant's Motion to Compel.

### A.  The Lanham Act

#### 1.  *"Commercial Activities"*

The Amended Complaint alleges a single count of false advertising based on Defendant's misrepresentation of the nature and characteristics of its *commercial activities.* In this case, Defendant's advertising claims of partisanship do not relate to any particular product or service, but instead are offered as part of the "image" Defendant projects and the "values" it promotes. *See Proctor & Gamble*, *supra*, 222 F.3d at 1272. As stated in the *Wall Street Journal* article and in other admissions by Defendant, "partisanship" claims build "trust" with clients, apart from the features of any specific product or service. *See* Part III, *infra*.

#### 2.  *Elements of Lanham Act Violation*

To prove a violation of the Lanham Act, Plaintiff must show that Defendant's advertising was 1) false and misleading; (2) actually or likely deceptive; (3) material in its effect on buying decisions; (4) connected with Interstate commerce; and (5) actually or likely injurious. *Riggs Inv. Mgmt. Corp. v. Columbia Partners,* 966 F.Supp. 1250, 1267 (D.D.C. 1997).

The standards of proof – and thus the bounds of discovery – vary according to the type of violation pleaded and the type of remedy sought. Plaintiff seeks only injunctive relief for advertising claims alleged to be literally false. Far more comprehensive discovery and proof would be necessary if Plaintiff were seeking to show Defendant's claims to be "true, but misleading", and if Plaintiff sought damages. However, Plaintiff has pleaded its claims and

3

prayer for relief narrowly. Accordingly, the need for discovery is necessarily more circumscribed.

### a. "Literal falsity"

The Lanham Act applies to advertising that is "literally false", as well as to advertising that is "literally true, but likely to mislead consumers". *Id.* at 1268. In the instant case, Plaintiff alleges only literal falsity.

### b. "Actual or likely deception"

Where "literal" falsity is shown for the first Lanham Act element, then proof of "actual or likely deception" (the second element) is not necessary. As the *Riggs* Court stated:

> Here, actual falsity has been shown. And, when this occurs, relief can be granted on the court's own findings without reference to the reaction of the buyer or consumer of the product. *PPX Enterprises v. Audiofidelity Enterprises*, 818 F.2d 266, 272 (2d Cir. 1987), *citing American Home Products Corp. v. Johnson &Johnson,* 577 F. 2d 160, 165 (2d. Cir. 1978).

*Id.* at 1268-69.

Here, Plaintiff only alleges literal falsity, thereby obviating the need to prove the second element, "actual or likely deception" (referred to in *Riggs* as "the reaction of the buyer or consumer of the product".) *See also Johnson & Johnson v. Rhone-Poulenc*, 19 F.3d 125, 129 (3d. Cir. 1994)(same). Discovery on the issue of "actual or likely deception" is therefore not required.

### c. Materiality

Proof of "materiality" does not require any showing that a misrepresentation is the only factor, or even the most important factor, in purchasers' decisions. In fact, it is unlikely that any one factor would always the most important to all consumers. Rather, there need only be "some showing that the defendant's misrepresentation was 'material', in the sense that *it would have some effect on consumers' purchasing decisions"*. 3 McCarthy on Trademarks and Unfair

4

Competition, §27:35 at 27-54 (emphasis added), *quoted in Hearst Business Pub., Inc. v. W.G. Nichols, Inc.*, 76 F.Supp.2d 459, 469 (S.D.N.Y. 1999); *McNeil-PPC, Inc. v. Pfizer Inc.*, 351 F.Supp.2d 226,248 (S.D.N.Y. 2005). *See also Cashmere & Camel Hair Mfg. Inst., v. Saks Fifth Avenue*, 284 F.3d 311-12 (1st Cir. 2002).

      d.    *Use in commerce*

There is no question that Defendant advertises in interstate commerce. Defendant admits that it advertises using its website, e-mails, listings in magazines, blogs and directories, the mails, and other contacts with customers and potential customers. *See* Answer at ¶8.

      e.    *Plaintiff's belief of likely damage resulting from false advertising*

In *Riggs,* the Court outlined the lower burden of proof that applies when only an injunction is sought:

> The Lanham Act specifically permits injunctions to halt continuing violations of the statute's provisions and to prevent future violations. 15 U.S.C. §1116(a). To be entitled to an injunction, in addition to materiality and use in interstate commerce, plaintiffs need only show that false or misleading statements are *likely* to cause injury…

*Riggs, supra*, 966 F. Supp. at 1272.

Accordingly, proof of actual injury in this case is not necessary. All that Plaintiff must show is that it "believes" that it is "likely to be damaged" by defendant's false claims." *See* 15 U.S.C §1125(a)(1). Courts addressing this element have held that a party need only demonstrate a "reasonable basis" for the belief that it is likely to be damaged by false advertising. *See, e.g., Johnson & Johnson v. Carter-Wallace*, 631 F.2d 186, 189-90 (2d Cir. 1980); *Warner-Lambert v. Breathasure*, 204 F.3d 87 (3d Cir. 2000). This standard also has been referred to as requiring only a showing of *some "logical causal connection" between the advertising and the plaintiff's own sales position. See McNeil-PPC, Inc. v. Pfizer Inc.*, 351 F.Supp.2d 226, 248 (S.D.N.Y. 2005); *Carter-Wallace*, supra, 631 F.2d at189-90. *See also Breathasure*, *supra*, 204 F.3d at 96

5

(3d Cir. 2000) (Injunction ordered where Plaintiff established "literal falsity" and direct competition between the parties; no other evidence required to establish a reasonable belief of likely injury).

These standards are legally significant, as Defendant's Motion to Compel often appears to assume incorrectly that Plaintiff must first demonstrate actual injury before the court may enjoin Defendant's false claims.

### III.   ARISTOTLE'S *PRIMA FACIE* CASE UNDER THE LANHAM ACT

Admissions in Defendant's own advertising and testimony provide *prima facie* evidence of the objective, good faith basis for Plaintiff's action. Much of Defendant's Motion to Compel is spent simply incanting allegations that no good faith objective basis exists for Plaintiff's claims, and that Plaintiff must therefore be motivated by bad faith. Defendant's Motion to Compel attempts to use such allegations to seek numerous additional documents that relate to many aspects of Plaintiff's business that Defendant freely admits have nothing whatsoever to do with its advertising claims about partisanship. These documents are of value to Defendant only as a matter of competitive curiosity.

The objective basis for Plaintiff's allegations is therefore highly relevant to this Court's consideration of Defendant's Motion to Compel. A brief review of key evidence reveals the *prima facie* merit of this lawsuit and should dispel Defendant's repeated allusions to the absence of a good faith basis for Plaintiff to pursue this action.

The Amended Complaint alleges that Defendant's advertisements about the so-called "partisan" nature of its commercial activities are false, material, and likely to damage Plaintiff. To date, the following facts establish Plaintiff's *prima facie* case:

a)        Defendant has already admitted under oath that its claim to be "Democrat-only" has provided NGP with an advantage over Aristotle in sales situations. *See* Deposition of NGP sale representative James Noble, Exhibit 1 at 53.[5]

b)        To this day, Defendant's own advertising at its website still specifically asserts that "People use NGP: … Because they **TRUST** us -- we are **PARTISAN** and work only for Democrats and their allies". *See* Exhibit 5 (emphasis in original).

c)        In August 2004, the *Wall Street Journal* article cited above states: "[V]endors say that a partisan stance builds trust with clients"…, [and] [p]artisan vendors say their approach is helping them to take market share away from the industry leader, Aristotle International Inc, which sells to both sides of the aisle." *See* Exhibit 2.

d)        In May 2004, Defendant quietly entered into a four-year agreement with another company for the express purpose of reselling Defendant's software to "right-leaning" organizations. *See* Exhibit 6 [to be filed under seal]. The parties have taken steps to conceal that NGP is the provider of the software. *See, e.g.,* Exhibit 7 [to be filed under seal].

e)        Defendant entered into this arrangement to sell to Republican allies in May 2004, three months *before* publication of the August 30, 2004, *Wall Street Journal* article focusing on the competitive benefits of partisanship.

f)        Nine months after entering this agreement for the express purpose of providing NGP's software to Republican allies under another company's label, Defendant's President, Nathaniel Pearlman, nevertheless wrote: "*It*

---

[5] Mr. Noble is the only NGP witness to have testified to date. Plaintiff has no reason to believe that other sales representatives of NGP, who have yet to be made available, will testify any differently.

    *would be easy to sell to the other side, or form a shadow company to do so, but we have worked only for Democrats are [sic] their allies. That feels good."* [6]

g) Ten months after entering this agreement, Pearlman published a comment entitled "Partisanship and Political Technology", in which he echoed the *Wall Street Journal* headline, saying: *"Partisanship can affect the trust of sensitive clients and can help build relationships with party committees, consultants, and allied organizations"*.[7]

h) Defendant's promotion of its partisanship has been so effective that Defendant has already admitted under oath that prospects often mention it first as a positive factor about the company. *See* Noble deposition, *supra*, Exhibit 1 at 45-46.

i) Defendant has further testified that the effect of such advertising is "a level of comfort that they probably receive or feel because we do work with Democrats only". *Id*. at 52-53.

j) A May 2006 consumer survey that Defendant currently touts at it own website also includes the express statement: "For many political organizations, the political persuasion of the vendor tends to be a deciding factor instead of what the technology can do for them."[8]

---

[6] *See* <u>Exhortations</u>, by Nathaniel Pearlman, linked from NGP corporate website, February 23, 2005. *See* Exhibit 8.

[7] See <u>Partisanship and Political Technology</u>, by Nathaniel Pearlman, linked from NGP corporate website, March 9, 2005. *See* Exhibit 9.

[8] *See* Personal Democracy Forum's *Consumer Guide to Software-as-a Service for Campaigns and Organizations* (May 2006), "Best Practices in Choosing a Software Vendor" at 31. *See* Exhibit 10. This consumer guide is touted at the home page of NGP's website at http://www.ngpsystems.com/ , with the link **"NGP Earns High Marks in User Survey of Campaign Software Vendors"**. *See* Exhibit 11.

## IV. ARGUMENT

### A. Discovery Standards

Parties are to be afforded a broad and liberal opportunity to conduct pretrial discovery, to discover information that is relevant or reasonably calculated to lead to discovery of admissible evidence. *Hickman v. Taylor*, 329 U.S. 507 (1947). However, in this Circuit, "[w]hile the standard of relevancy [in discovery] is a liberal one, it is not so liberal as to allow a party 'to roam in shadow zones of relevancy and to explore matter that does not presently appear germane on the theory that it might conceivably become so.'" *Food Lion v. United Steelworkers of America*, 103 F.3d 1007, 1012-13 (D.C Cir 1997), *quoting In re Fontaine*, 402 F. Supp. 1219, 1221 (E.D.N.Y. 1975). Moreover, where a party is "unable to offer anything but rank speculation", a court may deny discovery "that would amount to nothing more than a fishing expedition." *Bastin v. FNMA*, 104 F.3d 1392, 1396 (D.C. Cir. 1997).

### B. Defendant's Document Requests

**Request No. 1:**

Request No. 1 asks that Aristotle produce "all of Aristotle's customer feedback or survey information, and all of Aristotle's communications from and to customers, concerning NGP's software or services". Aristotle has agreed to produce such communications to the extent that they relate to claims of partisanship – that is, the narrowly-pleaded issue in this case.

Defendant claims that it needs all information from Aristotle about NGP's "software and services" to determine the "materiality" of Defendant's own advertising about its own partisanship. Yet the challenged advertising concerns only Defendant's commercial activities, not the "software and services" that are the subject of Request No. 1.

9

Defendant argues that it needs information from Aristotle's files about NGP's "software and services" to find "critical evidence concerning why people choose NGP." Motion to Compel at 4. But Defendant is merely using a "straw man" to misdirect attention from the admitted materiality of its advertising claims about its commercial activities.

The *only* relevant question about the materiality of Defendant's "partisanship" advertising is whether "it would have some effect on consumers' purchasing decisions". *See* 3 McCarthy, *supra*, at 27-54. Consumers clearly rely on many factors. Plaintiff only need prove that partisanship is one of such factors. Partisanship need not be the only factor, and need not even be the deciding one. To be material, it simply needs to be a factor.

As noted above, Defendant has already admitted the materiality of its partisanship claims. *See* Part III, *supra* (factors (a), (b), (f), (g), (h), and (i)). Plaintiff Aristotle has already agreed to turn over all of the requested documents to the extent they relate to any partisanship claims. Under these circumstances, Defendant has no good faith basis to ask Aristotle to produce consumer survey documents about Defendant's "software and services". Such documents are irrelevant to the issue of the admitted materiality of Defendant's own partisanship claims about its "commercial activities". Defendant's demand to see additional documents from Plaintiff under Request 1 is transparently a "fishing expedition", made solely out of competitive curiosity, and for no other *bona fide* reason.

**Request No. 8:**

Request No. 8 asks Aristotle to produce "all documents that show any of the Democrats, Republicans, and others you assisted through your software and services, for the last four election cycles (2000, 2002, 2004, and 2006). In lieu of producing the documents responsive to this request, you may provide a list of the names and addresses of each person or entity you assisted." Aristotle objected on relevance grounds.

NGP appears to argues that it must see Aristotle's customer lists in order to understand who Aristotle's customer were, because that would allow NGP to determine whether NGP turned down any because they were Republicans, and from this NGP could somehow prove that *all* of NGP's customers are Democrats or their allies. *See* Motion to Compel at 5. Defendant's justification for this request is incomprehensible.

More likely, the answer to the question of whether NGP only works with Democrats and their allies will be found in a) NGP's own customer files, and b) the customer files of NGP's reseller that provides NGP software to Republican allies under a private label to disguise the fact that NGP is supplying the software expressly to "right-leaning" organizations. *See* Exhibit 6 [to be filed under seal].

Defendant also repeats the same reason from its discussion of Request No. 1 that Aristotle's customer list is needed for NGP to disprove NGP's own admissions about the materiality of its partisanship claims. *See* Motion to Compel at 5. This is unpersuasive for the same reasons discussed above with respect to Request No. 1.

Again, Defendant's claim to need *Aristotle's* customer list in order to find out whether *NGP* has any clients who are not Democrats or their allies is illogical. This is a transparent "fishing expedition", made solely out of competitive curiosity, and for no other *bona fide* reason.

**Request No. 11:**

Request No. 11 asks Aristotle to produce "[a]ll marketing and promotional materials, and other documents, concerning the promotion or marketing of your software or services." Although such documents are utterly irrelevant to proof that Defendant's partisanship claims are false, Aristotle has agreed to provide advertising documents that relate to NGP.

In attempting to invoke its "unclean hands" defense as a basis for discovering all of Plaintiff's marketing materials for the past six years, Defendant reveals a misunderstanding of the legal basis for that equitable doctrine.

As noted above, Plaintiff's narrowly-pleaded complaint addresses only Defendant's claims of partisanship. The party asserting an unclean-hands defense "must show an immediate and necessary relation" between the Plaintiff's complaint and the alleged misconduct giving rise to the charge of "unclean hands". *Lee v. Christian Coalition of America*, 160 F.Supp.2d 14, 34 (D.D.C. 2001), quoting *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 245 (1933). As the Supreme Court stated in *Keystone Driller*:

> [C]ourts of equity do not make the quality of suitors the test. They apply the maxim requiring clean hands only where some unconscionable act of one coming for relief has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation. They do not close their doors because of plaintiff's misconduct, whatever its character, that has no relation to anything involved in the suit, but only for such violations of conscience as in some measure affect the equitable relations between the parties in respect of something brought before the court for adjudication.

Defendant has provided only a vague, unsworn, non-specific assertion that Defendant "believes" that at some point in the last six years, Plaintiff has said something "false" about Plaintiff's own "software and services". Motion to Compel at 5.

More importantly, no "unconscionable act" is identified. Defendant does not proffer the slightest hint of any relation whatsoever – much less an "immediate and necessary relation" – between its vague assertion and the narrowly targeted claim that Plaintiff has brought to enjoin Defendant's false claims of partisanship. Nor could there be such relation.

Defendant does not allege that Plaintiff also falsely claims to be partisan. Defendant knows that, unlike Defendant, Plaintiff is open about the fact that it makes its political software available to both Republican and Democratic allies. *See, e.g., The Wall Street Journal*. Ex. 2.

12

The *only* claim that Plaintiff has brought before the court for adjudication is that Defendant misrepresents its partisanship. If Aristotle has made any advertising assertions of partisanship, it would produce them. But there are none.

Defendant's claim that Plaintiff's advertising about its own products and services is somehow needed to allow the trier of fact to "understand the industry" is equally vague and unfounded. Defendant makes no proffer whatsoever of how all of Plaintiff's advertisements about its "software and services" could possibly relate to proving or disproving Defendant's false claims of partisanship with respect to its commercial activities .

Defendant's discovery request has all the earmarks of another classic "fishing expedition." Defendant has not made any effort to identify the alleged misconduct by Plaintiff that has an "immediate and necessary relation" to Plaintiff's narrowly-pleaded complaint. Defendant merely hopes that with a generic cry of "unclean hands", the court will grant Defendant the leeway "to explore matter that does not presently appear germane on the theory that it might conceivably become so.'" *See Food Lion, supra* at *1012*-13. This is a clear abuse of the "unclean hands" doctrine to justify vexatious discovery, and should not be permitted.

**Request No. 16:**

Request No. 16 asks that Aristotle produce "all documents that mention NGP or Pearlman". Without conceding the potential relevance of all such documents, Aristotle agreed to produce documents to the extent they relate to NGP's false advertising; Aristotle advertising about NGP, communications with or by NGP or Pearlman; communications concerning this litigation; and Aristotle's comments on use of FEC Commission Records.

Aristotle asks the Court to take note that, as part of Plaintiff's response to this request, Plaintiff already is producing, and will produce, all of the requested documents that relate to partisanship claims, and all that relate to communications concerning the lawsuit. This

necessarily includes communications about the "motives" for bringing the lawsuit. But Defendant's extraordinarily speculative and overbroad request seeks far more, and Defendant makes no showing whatsoever why its request is not a pure fishing expedition.

Plaintiff and Defendant are in the tenth year of competition with respect to their software and services. There are clearly many documents that relate to this nearly decade-long competition on "goods and services" that have nothing to do with the claims in the complaint about Defendant's false partisanship advertising.

To justify its overbroad document request, Defendant provides four variations of the same reason – to wit, claiming that Plaintiff has brought its action without a good faith basis because customers really choose NGP for reasons other than the false partisanship advertising. See Motion to Compel at 6. Accordingly, Defendant suggests that every document that even mentions NGP or its owner -- virtually the entire history of the competition between the parties -- must be subject to discovery in order to prove that Plaintiff lacks a good faith basis for pursuing its claim.

But Plaintiff has already laid out persuasive objective evidence establishing a *prima facie,* good faith basis for the claim that Defendant's advertising about its partisanship is false, material, and likely to cause injury. *See* Part III, *supra*. Plaintiff is therefore entitled to bring this action without subjecting itself to *carte blanche* discovery of all plans to compete with Defendant on software and services that are not part of the Lanham Act claim. The comparative details and features of the parties' actual products and services are immaterial. Defendant's mere incantation of "bad faith", without any proffer for the allegation, cannot make it otherwise.

As noted above, Plaintiff's agreement to produce the communications concerning the lawsuit already includes communications about the "motives" for bringing the lawsuit. But unless limited by the Court, Request No. 16 would allow Defendant to rummage through *all*

internal Aristotle documents covering the years of past and present competition between the parties on the features of their "software and services", no matter how far removed from the issues in the case. Defendant is understandably curious to know how Plaintiff plans to compete with Defendant on software and services. But Defendant's overbroad request has no legitimate purpose in the lawsuit.

To the extent that Defendant cites cases such as *Newborn v. Yahoo,* 437 F.Supp.2d 1 (D.D.C. 2006) for the proposition that discovery of a plaintiff's motives, biases and good faith in filing the suit should open up discovery of the entire history of the parties' competition, such reliance is misplaced. In *Newborn* and the cases upon which that Court relies, the decisions are unanimous on the fact that the case must be objectively without merit before the Plaintiff's "motives"[9] in filing suit might even arguably become relevant in awarding attorneys fees to the prevailing party at the conclusion of the lawsuit [10]. Defendant has not and cannot cite to a single case where attorneys fees were awarded under the Lanham Act when a plaintiff's action had objective merit.

Plaintiff has demonstrated the *prima facie* good faith legal basis for its complaint. In contrast, Defendant has made no colorable showing that allegations in the complaint are objectively without merit, much less that Defendant will one day be the "prevailing party". To the extent that Defendant seeks documents in addition to what Plaintiff has agreed to provide,

---

[9] As noted above, Plaintiff has already agreed to provide all communications concerning the lawsuit, including communications about the "motives" for bringing the lawsuit.

[10] *See, e.g., Newborn, supra,* 437 F.Supp.2d at 8 (where plaintiff's claim was "'wholly without merit", relied on inapposite statutes, and contained "vague allegations", evidence of motive or bad faith was considered); *Noxell Corp. v. Firehouse No. 1 Bar-B-Que Rest.,* 771 F.2d 521 (D.C. Cir. 1985)(Fees awarded to defendant where Plaintiff's choice of venue was without objective merit, as it contravened Supreme Court decision directly on point; Court also looked to issues of economic coercion and resulting hardship on defendants); *Boney, Inc. v. Boney Servs., Inc.,* 127 F.3d 821, 825 (9th Cir.1997)(where complaint was not frivolous and raised colorable legal and factual issues, court of appeals sustained denial of attorneys fees )

15

Request No. 16 is another "fishing expedition", undertaken solely out of competitive curiosity, and for no other *bona fide* reason.

**Request No. 18:**

Request No. 18 asks that Aristotle produce "all documents relating to complaints from customers concerning software or services Aristotle has provided to them, from January 1, 2000 to the present." Aristotle has objected to this request on the ground that it seeks information that is irrelevant and the production of which is not reasonably calculated to lead to discovery of admissible evidence.

NGP claims that it needs to know every complaint that any of Aristotle's customers have made in the last 6 years, in order to show the reasons "customers have chosen NGP over Aristotle". As stated above, this case is not about advertising claims concerning "software and services." Moreover, Plaintiff only need show a reasonable belief of likely injury. Plaintiff does not need to show that it has lost customers in the past on account of any false advertising. *See* Part II A.2 (e), *supra*.

Here, the logical causal connection needed for an injunction can already be established under prevailing law solely by reliance on the literal falsity of Defendant's claims and the direct competition between the parties. *See Breathasure*, *supra*, 204 F.3d at 96. The reasonableness of such belief is further underscored by Defendant's own admissions as to the merits, discussed above with respect to Request No. 1 and in Part III, *supra*.

Defendant's demand for more information to be produced under Request No. 16 appears to be made solely out of competitive curiosity, and for no other *bona fide* reason.

**Request No. 19:**

Request No. 19 asks that Aristotle "produce all documents relating to communications from you to third parties, including but not limited to the Federal Election Commission, in which

you have mentioned or referred to NGP." Aristotle agreed to produce such documents that constitute Aristotle advertising that refers to NGP, communications concerning the lawsuit, and comments on the use of Federal Election Commission records.

The considerations underlying Request No. 19 are similar to those in Request No. 16. Defendant claims the documents have a "direct bearing on many issues in this case", *see* Motion to Compel at 8 but does not say what they are, or why the documents that Aristotle has agreed to provide are not sufficient. This "justification" is so devoid of specificity as to be meaningless.

Defendant also repeats its need to explore whether there is a "good faith" basis for the claims, and repeats its conclusory assertion that there is none. The reasons for Aristotle's objection to this claim are the same as those discussed with respect to Request No. 16 above.

In Part III, *supra*, Plaintiff has demonstrated that there is a *prima facie*, good faith basis for its claims. In contrast, Defendant has provided nothing but a speculative invocation of the assertion that there was no good faith basis for the complaint. Given the long history of competition between the parties, and the narrow scope of the claims in the complaint, there is no reason, for example, to require Aristotle to turn over all documents relating to features of software and services. Defendant is simply not entitled to rummage through all of Plaintiff's competitively valuable documents with the unsubstantiated cry of "bad faith".

Curiously, Defendant points to Plaintiff's disclosure that it provided the complaint to a reporter in December 2005 as proof that NGP needs other categories of documents besides those that Plaintiff has agreed to produce. But providing the complaint to a third party falls squarely within the group of documents that Plaintiff has already agreed to produce – that is, communications with third parties about the litigation. That is precisely why Plaintiff disclosed the communication in discovery, and this is precisely the kind of communication that Defendant may explore. But, for the same reasons discussed with respect to request No. 16, not every

communication with anyone about anything having to do with NGP at any time has even potential relevance to any issue in the case. There must be some reasonable limit, and Defendant provides no reason why it needs unlimited discovery into the entire history of all communications concerning NGP.

Like Request No. 16, Defendant's demand for more information under Request No. 19 is another "fishing expedition", made solely out of competitive curiosity, and for no other *bona fide* reason.

**Request No. 24**

Request No. 24 asks that Aristotle produce "all documents relating to Aristotle's sale of information relating to individuals and campaign contributors Aristotle obtained from the Federal Election Commission's public records." Aristotle has objected to this request on the ground that it seeks information that is irrelevant and the production of which is not reasonably calculated to lead to discovery of admissible evidence.

Request No. 24 seeks documents about FEC data, purportedly needed to show Plaintiff's lack of good faith basis for its action. Defendant provides no explanation why such information pertains to this case in any way. In any event, this unsupported allegation is contradicted by the evidence of the *prima facie* case Plaintiff has described above in Part III.  Defendant's demand for more evidence relating to a supposed lack of good faith justification in bringing the suit is therefore similar to Requests 16 and 19 above in that regard, and is equally unpersuasive.

Defendant's conclusory, non-specific assertion about NGP's "belief" that Aristotle's has "impermissibly" used FEC records also is mentioned as "relevant to Aristotle's unclean hands". As discussed above, an invocation of "unclean hands" requires an "immediate and necessary relation" between the claims that Plaintiff has brought and Plaintiff's alleged misconduct. See *Keystone Driller, supra,* 290 U.S. at 245. Plaintiff's claim in this false advertising case is that

18

Defendant's assertions of its pure partisanship are false. Defendant does not make the slightest effort to tie its claim about "FEC records" to the narrow claim that Plaintiff has brought before the court for adjudication. There is no claim in this case that relates in any way to FEC records, and this request No. 24 must also be denied.

Respectfully submitted,

_____/s/_____
J. Blair Richardson, Esq. (DC Bar No. 385482)
          Blair.Richardson@aristotle.com
7440 Chummley Court
Falls Church, Virginia 22043
Telephone:    (703) 846-0078
Facsimile:    703-846-0576
Counsel to Plaintiff



_____/s/_____
Robert L. Bredhoff, Esq. (DC Bar No. 338103)
          RBredhoff@steinmitchell.com
David U. Fierst, Esq. (DC Bar No. 912899)
          DFierst@steinmitchell.com
STEIN, MITCHELL & MEZINES, L.L.P.
1100 Connecticut Avenue, N.W.
Suite 1100
Washington, D.C. 20036
Telephone:    (202) 737-7777
Facsimile:    (202) 296-8312 (fax)
Counsel to Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on this 3d day of October, 2006, a copy of the foregoing **PLAINTIFF'S OPPOSITION TO DEFENDANT NGP SOFTWARE INC.'S MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS FROM ARISTOTLE** was sent by facsimile and first-class mail, postage prepaid, to the following:

Eric L. Yaffe, Esq.
Eric.yaffe@gpmlaw.com
Iris Figueroa Rosario, Esq.
Iris.Rosario@gpmlaw.com
GRAY, PLANT, MOOTY, MOOTY & BENNETT, PA
2600 Virginia Avenue, NW, Suite 1111
Washington, DC 20037
Telephone: 202-295-2200
Facsimile: 202-295-2250

Attorneys for Defendant NGP Software, Inc.


_____/s/_____
J. Blair Richardson