IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ARISTOTLE INTERNATIONAL, INC., )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>NGP SOFTWARE, INC., )<br>)<br>Defendant. ) | Civil Action No. 1:05CV01700 |

**NGP SOFTWARE INC'S REPLY TO ARISTOTLE INTERNATIONAL'S OPPOSITION
TO NGP'S MOTION TO COMPEL**

Aristotle proclaims in its Opposition that it has established its *prima facie* case and, therefore, asserts that NGP is not entitled to certain discovery. In other instances, Aristotle tries to narrow the focus of NGP's discovery to solely Aristotle's claims. Aristotle miscomprehends the rules of discovery. Rule 26(b)(1) of the Federal Rules of Civil Procedure allows for the discovery of "any matter, not privileged, that is relevant to the claim or defense of any party . . . ." "For good cause, the court may order discovery of any matter relevant to the subject matter involved in this action. Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Under this standard, parties are to be afforded a broad and liberal opportunity to conduct pretrial discovery, a policy that militates strongly in favor of disclosure of information. *See, e.g., Hickman v. Taylor*, 329 U.S. 495, 507 (1947). "No longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying the opponent's case." *Id.* Here, Aristotle is playing shell games, trying desperately to limit NGP's discovery of information related to NGP's defenses and Aristotle's claims and/or information likely to lead to the discovery of admissible evidence. For the reasons stated herein, NGP asks

that the Court grant its Motion to Compel and order Aristotle to produce the requested documents.

## BRIEF PROCEDURAL BACKGROUND

Aristotle's initial Complaint included allegations that NGP was engaged in an e-mail spam venture, that NGP lacked honesty and integrity, and that NGP's advertising was false and/or misleading. Count I of the Complaint averred a Lanham Act violation, and Count II averred unjust enrichment. Aristotle sought monetary damages, in the form of lost profits, and injunctive relief. After NGP filed a motion to dismiss Count II, Aristotle agreed to dismiss that count and incorporate it into Count I.

In June 2006, NGP served a request for production of documents seeking documents relevant to Aristotle's Complaint and prayers for relief. Certain of NGP's discovery requests were aimed, in part, at establishing that Aristotle's Complaint was frivolous and not brought in good faith, and that Aristotle was motivated by a desire to harm a business (NGP's) that it perceived to be a vigorous competitor and a threat to its position in the marketplace. NGP's discovery requests, and its responses to Aristotle's requests, prompted Aristotle to back away from many of its claims, and Aristotle amended the Complaint, dismissing: (1) its claim that NGP's advertising was "misleading;" (2) its claim that NGP lacked honesty and integrity; (3) its claim that NGP was involved in an e-mail spam venture; and (4) its claim for monetary damages. Aristotle's new, Amended Complaint, alleges that NGP's advertisements stating that it works only for "Democrats and their allies" is "literally false," and Aristotle seeks injunctive relief only. While Aristotle appears to believe that its more narrow claim immunizes it from having to produce discovery to NGP, that is simply not the case. NGP is entitled to obtain discovery that is

relevant to Aristotle's claims and NGP's defenses, and is calculated to lead to the discovery of admissible evidence.

## LITERAL FALSITY

At the outset, it is important to note that, while Aristotle claims that NGP's advertisements stating that it works only for Democrats and their allies is literally false under the Lanham Act, nowhere in its opposition papers does Aristotle address this issue or explain why it believes that NGP's advertisements are literally false. Aristotle would like the Court to believe that it has proven its case. But Aristotle's silence in its opposition papers on the issue of literal falsity is deafening. That is because the phrase "Democrats and their allies," and NGP's description of itself as serving this constituency, are literally true. NGP has always considered the term "allies" as used in its website to mean entities that usually or sometimes associate or work with Democrats. *See* Exhibit 1. In any event, the phrase is not a marketing strategy, but a preference for which constituency NGP wants to work with as a means of motivating its employees.

Aristotle appears to ask the Court to presume that NGP's claim that it works with Democrats and their allies only is literally false. The Court should certainly not make such a presumption. Indeed, NGP's claim is true, and NGP continues to seek certain discovery to rebut Aristotle's claims. In addition, under the Lanham Act, if NGP can prove that Aristotle brought this case in bad faith – which NGP believes it will be able to show – then NGP will be entitled to its attorneys' fees and costs.

## ARGUMENT

### Request No. 1

Request No. 1 asks that Aristotle produce "all of Aristotle's customer feedback or survey information, and all of Aristotle's communications from and to customers, concerning NGP's software or services."

Aristotle objects to the production of these documents, claiming that since it has already proven that NGP's partisanship is a factor in consumers' decisions on political software purchases, it has satisfied the materiality element of a Lanham Act violation. Thus, according to Aristotle, NGP is not entitled to the discovery it seeks. Aristotle Opp. at 10. Aristotle, however, has not, in fact, proven that "partisanship" is a factor in consumers' decisions on which software vendor to choose. Moreover, even if there was some evidence that partisanship is a factor in consumers' decisions, NGP is certainly entitled in discovery to gather evidence to disprove or rebut such a proposition. Aristotle's view of discovery is that it is entitled to discovery that supports its claims, but that NGP is not entitled to discovery that might rebut Aristotle's claims or support NGP's defenses. Such a view is incompatible with the Federal Rules.

NGP's request is narrowly tailored, seeking only customer feedback or survey information *pertaining to NGP or its software or services*. Moreover, as part of its defense, NGP is entitled to show that consumers, such as consumers surveyed by Aristotle, do not select political software programs based on vendors' political leanings but for other reasons, such as customer care and service, price, or quality. As NGP noted in its Motion to Compel, the "materiality requirement is based on the premise that not all deceptions affect consumer decisions." *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1250 (11th Cir. 2002); *National Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 855 (2d Cir. 1997)

(Advertising claim that defendant's updated basketball game scores were "direct from each arena" was false because the scores, in fact, came from broadcasts and not directly from each arena. However, "[w]hether the data is taken from broadcasts instead of being observed first-hand, is, therefore, simply irrelevant. What consumers cared about was obtaining up to the minute sports scores. They were indifferent to the method by which those scores were obtained."). Indeed, Aristotle is the one alleging that NGP's advertising stating that it is partisan affects consumers' purchasing decisions. The survey information regarding what consumers have said about NGP directly addresses this issue and the element of materiality.

      Aristotle is well-aware that a company's partisanship does not affect consumer purchasing decisions in any significant manner. A survey conducted by Aristotle sometime in October 2004 shows that partisanship was not even an issue in consumers' decisions in selecting or choosing political software vendors. Attached as Exhibit 2. Consumers rated the following factors as important in selecting vendors, according to Aristotle's own survey: (1) knowledgability – tech support; (2) quick access – support; (3) 24/7 tech support; (4) ease of use; (5) ease of training; and (6) price. *Id.* Nowhere did partisanship arise as a criterion, according to Aristotle's survey. Information such as this is critical to NGP's defense. Yet Aristotle is, impermissibly, withholding this type of information from its production to Aristotle.

      Furthermore, Aristotle cherry picks from the evidence, ignoring evidence pointing to the fact that consumers choose political software vendors because of the quality of the software or price rather than because of a vendor's political leanings. For instance, Aristotle conveniently ignores the pertinent sections of the Wall Street Journal article concerning NGP that it presented as an Exhibit to the Court, wherein a representative of the office of Senate Minority Leader Tom Daschle noted that the "campaign switch . . . to NGP from Aristotle's software a few years ago

[was] because she like[ed] NGP's customer service better than Aristotle's. Partisanship wasn't a big factor." Exhibit 2 of Aristotle's Opp. Even Aristotle's co-founder and chief executive, John Phillips, *disclaims* that partisanship is a factor. *Id*. In the same Wall Street Journal article, "[h]e says political campaigns want the best technology, not an ideological match." *Id*. In addition, in an article written by NGP's founder, Nathaniel Pearlman, and submitted to the Court by Aristotle but not cited in Aristotle's brief, Mr. Pearlman noted on his personal blog that "[N]o one chooses a Democratic-only vendor if they think they are getting an inferior product." Exhibit 9 to Aristotle's Opp.

Moreover, contrary to Aristotle's contention, James Noble (a new employee at NGP) in his deposition did not concede that partisanship has an impact on purchasing decisions. Aristotle conveniently failed to include excerpts from Mr. Noble's deposition wherein he explained that consumers choose political software vendors based on the quality of the software and price. Attached hereto as Exhibit 3. Partisanship is typically not a factor at all; on the contrary, Mr. Noble speculated that, all factors being equal (such as price, quality, and service), people may choose a partisan vendor, such as NGP, because of the comfort level that may feel with the vendor. *Id*. But this certainly does not drive the decision. *Id*.

Indeed, Aristotle has not even begun to show, nor could it show, that its prices, quality, and service have approached NGP's in the eyes of the consuming public, and that there has ever been a customer who has chosen NGP primarily because of its partisan, Democratic leanings. Moreover, even if Aristotle could establish that some customers might choose NGP in part because of its Democratic leanings, it cannot show that the advertising that Aristotle alleges is false constitutes the reason for customers choosing NGP. Under any measure, NGP is a

6

Democratic-leaning company, and regardless of its specific advertising the same customers would undoubtedly choose NGP over other vendors.

At this stage, NGP is certainly entitled to receive all communications with customers and survey information from Aristotle to establish that partisanship, and NGP's specific advertising, is not material to consumer purchasing decisions, and NGP respectfully requests that the Court order Aristotle to produce such information.

**Request No. 8:**

Request No. 8 asks that Aristotle produce "all documents that show any of the Democrats, Republicans, and others you assisted, through your software and services, for the last four election cycles (2000, 2002, 2004, and 2006). In lieu of producing the documents responsive to this request, you may provide a list of the names and addresses of each person or entity you assisted."

Aristotle contends that this request is irrelevant and constitutes a "fishing expedition." Aristotle Opp. at 10-11. However, the request seeks documents relating to Aristotle's subjective claim of "injury." Aristotle asserts in its brief that its subjective view of likely injury is the only showing required under the Lanham Act, citing a number of cases in support. The cases it cites, however, contradict Aristotle's assertion. For example, in *Johnson & Johnson v. Carter-Wallace, Inc.*, 631 F.2d 186 (2d Cir. 1980), the Second Circuit noted that "despite the use of the word 'believes,' something more than a *plaintiff's mere subjective belief* that he is injured or likely to be damaged is required before he will be entitled even to injunctive relief." *Id.* at 189 (emphasis added). "The correct standard is whether it is likely that . . . [defendant's] advertising has caused or will cause a loss of . . . [plaintiff's] sales, not whether . . . [plaintiff] has come forward with specific evidence that . . . [defendant's] ads actually resulted in some definite loss

7

of sales." *Id.* Likewise, in *McNeil-PPC, Inc. v. Pfizer, Inc.*, 351 F. Supp. 2d 226 (S.D.N.Y. 2005) – another case cited by Aristotle – the court stated that the standard required "more than a plaintiff's mere subjective belief." *Id.* at 247 (quoting *Johnson & Johnson*, 631 F.2d at 189, and noting that in that *Johnson & Johnson* case, "plaintiff satisfied this requirement with specific evidence that consumers use plaintiff's product for specific purposes and defendant's ad campaign affects those markets, and that plaintiff supports its case with sales data, a consumer witness' testimony that she changed products based on defendant's false advertising, and survey evidence of consumer confusion.").

Here, Aristotle claims that NGP has undertaken false advertising for many years (Amended Complaint ¶ 16). Under the case law that Aristotle cites, proof of injury is an important element, and Aristotle must show something more than its subjective belief that it has allegedly been injured. *Johnson & Johnson*, 631 F.2d at 189; *McNeil-PPC, Inc.*, 351 F. Supp. 2d at 247. Documentation concerning the Democrats, Republicans, and others Aristotle has assisted in the last four election cycles is relevant to the issue of Aristotle's alleged injury. Indeed, NGP is entitled to show that, assuming *arguendo* that there has been false advertising, Aristotle has suffered no reasonable or cognizable injury and that Aristotle's clientele has not diminished as a result of this alleged false advertising. Without knowing which clients Aristotle has been servicing, NGP cannot possibly address Aristotle's claims of injury. For example, if NGP can show that numerous Democrats and Democratic allies have selected Aristotle, that would certainly constitute some evidence that Aristotle has not been injured by any alleged false advertising by NGP. NGP is entitled to obtain such evidence through discovery.

Moreover, Aristotle is seeking injunctive relief only, and under the well-established elements of injunctive relief, Aristotle must show that it has been irreparably harmed by NGP's

alleged false advertising. *Nichols v. Truscott*, 424 F. Supp. 2d 124, 143 (D.C.C. 2006) (to obtain an injunction, a plaintiff must show (1) a likelihood of success on the merits, (2) irreparable harm in the absence of preliminary [or permanent] injunctive relief, (3) an injunction would not substantially harm other interested parties, and (4) the public interest would not be significantly harmed by an injunction). Documents showing that there has been an upswing, not a downturn, in Aristotle's clientele for the past election cycles, especially in Aristotle obtaining customers that might be considered Democrats and their allies, would show that Aristotle has not suffered irreparable harm and/or injury in this case.

### Request No. 11

Request No. 11 asks that Aristotle produce "[a]ll marketing and promotional materials, and other documents, concerning the promotion or marketing of your software and services, from January 1, 2000 to the present."

Aristotle objects that this request is irrelevant and overbroad. Aristotle Opp. at 12. The information is relevant for an important reason: Aristotle is hardly in a position to claim literal falsity when in its own commercial activities, it has made claims that are patently and literally false. For this reason, NGP has pled "unclean hands" as an affirmative defense, and is entitled to receive documentation related to that defense. Specifically, Aristotle has used the following false and misleading advertisements:

| Statement | Reason Why The Statement Is False |
| --- | --- |
| Aristotle has advertised on its web site and through other sources that its program is the only one approved by the Federal Election Commission (Aristotle's software is the only "FEC-approved software program"), a claim that is blatantly false. *See* Exhibit 4. | The FEC's web site clearly states: "***The FEC does not officially endorse or approve electronic filing software products***." Exhibit 5 (emphasis in the original). |
| Aristotle has in the past and may continue | Under law, the names and addresses of |

| | |
|---|---|
| to be selling or including in its software contributor information about individuals, and other information, obtained from the FEC's online public records. *See* Exhibits 6 and 7. | individual contributors contained in FEC records (except where the contributor is a political action committee), may not be sold or used for any commercial purpose or to solicit any type of contribution or donation, such as political or charitable contributions. 2 U.S.C. § 438(a)(4); 11 C.F.R. § 104.15.  In the marketing of its products and services, Aristotle claims that only its software tells its users "how much your contributors have given to other candidates, PACs and parties." Exhibit 6. Inclusion of such information as part of Aristotle's products and/or services is prohibited under the FEC's regulations and under law since Aristotle is providing names and addresses garnered from the public records for the purpose of allowing it or its customers to make solicitations. Aristotle's marketing that it is the only company able to provide this feature is literally (and by necessary implication) false. |
| Aristotle's advertisement that the "Top 6 Reasons NGP Users are Switching to Aristotle," is literally false. *See* Exhibit 6. | Only one "user" has switched from NGP to Aristotle. Exhibit 6. |

Considering that Aristotle has engaged in false and/or misleading advertising, the very same type of claim it makes against NGP, NGP is entitled to documents pertaining to these issues. As Aristotle notes in its Opposition, "[t]he party asserting an unclean-hands defense 'must show an immediate and necessary relation' between the Plaintiff's complaint and the alleged misconduct giving rise to the charge of 'unclean hands.'" Aristotle's Opp. at 12 (quoting *Lee v. Christian Coalition of Am.*, 160 F. Supp. 2d 14, 34 (D.D.C. 2001)).  The appropriate nexus is well-established in this case, as shown above.

Finally, Aristotle's marketing materials are important to NGP so that it may learn how Aristotle deals with the "partisanship" issue with its customers or prospective customers. What Aristotle says or does not say to customers concerning its stance and the partisan or non-partisan stance of other vendors relates directly to the element of materiality under the Lanham Act. For instance, as noted above, Exhibit 2, a survey conducted by Aristotle in October 2004, shows that partisanship was not an issue raised by consumers in selecting political software vendors. Certainly, NGP is entitled to Aristotle's marketing materials and what it communicates (or does not communicate) to consumers about partisanship. Aristotle should be ordered to produce the requested documents.

**Request No. 16**

Request No. 16 asks that Aristotle produce "all documents that mention NGP or Pearlman [Nathaniel Pearlman is the owner of NGP]."

Aristotle contends that it is not required to disclose documents that mention NGP or Nathaniel Pearlman, and that, in any event, it has allegedly already disclosed the documents that it, unilaterally, determined are relevant to NGP. Aristotle Opp. at 13-14.

Aristotle misapprehends the discovery rules and, once again, is trying to limit, impermissibly, NGP's discovery of relevant information. Documents mentioning NGP or Nathaniel Pearlman may yield information pertaining to a claim or a defense in this case and/or may yield information that could be used for impeachment purposes, which under the commentary to the Federal Rules of Civil Procedure, is discoverable. "A variety of types of information not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action." Fed. R. Civ. P. 26 (2000 commentary). "Similarly,

information that could be used to impeach a likely witness, although not otherwise relevant to the claims or defenses, might be properly discoverable." *Id.*

Moreover, NGP has the right to documents that test the credibility of Aristotle's motivation behind this lawsuit. Aristotle has been concerned about NGP for some time, going to great lengths to capture NGP's customers by sending them advertisements on why NGP's customers should switch to Aristotle. *See* Exhibit 6. Indeed, after the filing of this lawsuit, Aristotle sent a copy of the Complaint to a reporter at Forbes magazine. This evidence (and other evidence that NGP needs) will show that this lawsuit has nothing to do with NGP's alleged false advertising, and everything to do with trying to injure and "knock down" (through the legal process) NGP. NGP should be allowed to present this evidence, and a factfinder deciding the merits of this case should have an opportunity to weigh Aristotle's credibility and its reasons for bringing this lawsuit.

In any event, non-privileged documents mentioning or referring to NGP or Mr. Pearlman will undoubtedly address issues concerning the phrase "Democrats and their allies," customers' views of NGP, customers' reasons for choosing one vendor over another, and issues of the quality of service and pricing of the two companies. While it may be understandable why Aristotle would prefer not to produce such information, there can be little question that such information is highly relevant to this lawsuit, and should be produced.

**Request No. 18**

Request No. 18 asks that Aristotle produce "all documents relating to complaints from customers concerning software or services Aristotle has provided to them, from January 1, 2000 to the present."

Again, Aristotle objects because, in its view, this request constitutes a "fishing expedition" and the documentation is irrelevant to its claims. The documents in question are important for the following reason: The documents pertain to Aristotle's alleged injury. NGP is entitled to debunk Aristotle's allegation that it has been injured or will likely be injured. As noted in its defense (paragraph I of the Answer to the Amended Complaint), NGP is entitled to show that Aristotle has not suffered any injury. Customer complaints of Aristotle's software and services will show that, if any injury has been suffered by Aristotle over the last few years, such injury is the result of its own doing and/or because of customer complaints of its software and services and not because of any alleged false advertising by NGP.

**Request No. 19**

Request No. 19 asks that Aristotle produce "all documents relating to communications from you to third parties, including but not limited to the Federal Election Commission, in which you have mentioned or referred to NGP."

Aristotle again objects because, it argues, this request is overbroad. Aristotle Opp. at 17. Aristotle also asserts that the information is irrelevant because it has proven its prima facie case that NGP's advertising is false. *Id.*

As noted repeatedly herein, NGP is entitled to documentation that establishes its defenses and rebuts Aristotle's claims. Aristotle's pronouncements that it has satisfied its burden of proof have no bearing on this Motion, especially since discovery has not yet been completed and NGP has been unable to obtain relevant documents. NGP has narrowly tailored the request for specific documentation that mentions NGP, not documentation on other matters irrelevant to this case.

In any event, the request seeks relevant information concerning NGP and what Aristotle has said about NGP to the FEC. It is NGP's contention that Aristotle has brought this lawsuit out of spite in an effort to handicap NGP's business. Indeed, Aristotle has admitted already that, after bringing this lawsuit, it provided a copy of the complaint to Forbes magazine, in a likely effort to sully NGP in the eyes of the consuming public. NGP is entitled to the information Aristotle has sent to Forbes and others regarding this lawsuit, as well as information in general that Aristotle has distributed to others about NGP. Information of this kind may lead to the discovery of admissible evidence. And, at a minimum, such information may pertain to Aristotle's credibility and may be used for impeachment purposes at trial.

**Request No. 24**

Request No. 24 asks that Aristotle produce "all documents relating to Aristotle's sale of information relating to individuals and campaign contributors Aristotle obtained from the Federal Election Commission's public records."

Aristotle objected for the same reasons noted above. The information, however, is critical to NGP's unclean hands defense. As specifically noted in Request No. 11, it is NGP's contention that Aristotle has and may still be illegally including data obtained from the FEC's records about contributors in an effort to gain a competitive advantage in the marketplace and is falsely advertising that it is the only vendor in the marketplace with this capability. This clearly is related to NGP's unclean hands defense, in that Aristotle has been or is engaging in false advertising in violation of the Lanham Act.

## CONCLUSION

For the reasons stated herein, as well as for the reasons stated in its initial brief, NGP asks that the Court grant its Motion to Compel.

Respectfully submitted,

/s/ Iris Figueroa Rosario
Eric L. Yaffe (DC Bar No. 439750)
 Eric.Yaffe@gpmlaw.com
Iris Figueroa Rosario (DC Bar No. 477009)
 Iris.Rosario@gpmlaw.com
GRAY, PLANT, MOOTY, MOOTY
 & BENNETT, P.A.
2600 Virginia Avenue, N.W., Suite 1111
Washington, D.C.  20037
Telephone:   (202) 295-2200
Facsimile:   (202) 295-2250

Date: October 9, 2006

Attorneys for Defendant
NGP Software, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th of October, 2006, a copy of the foregoing **NGP SOFTWARE INC'S REPLY TO ARISTOTLE INTERNATIONAL'S OPPOSITION TO NGP'S MOTION TO COMPEL** was sent electronically via the Court's PACER system, by facsimile, and by first-class mail, postage prepaid, to the following:

Robert L. Bredhoff, Esq. (DC Bar No. 338103)
  Rbredhoff@steinmitchell.com
David U. Fierst, Esq. (DC Bar No. 912899)
  Dfierst@steinmitchell.com
Stein, Mitchell & Mezines L.L.P.
1100 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone:   (202) 737-7777
Facsimile:   (202) 296-8312

J. Blair Richardson, Esq. (DC Bar No. 385482)
  Blair.Richardson@aristotle.com
7440 Chummley Court
Falls Church, Virginia 22043
Telephone:   (703) 846-0078
Facsimile:   (703) 846-0576

Attorneys for Plaintiff Aristotle International, Inc.

/s/ Iris Figueroa Rosario

GP:2011419 v2