IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ARISTOTLE INTERNATIONAL, INC. | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No.1:05CV01700 |
| | ) | |
| NGP SOFTWARE, INC. | ) | |
| | ) | |
| Defendant | ) | |

**PLAINTIFF'S SURREPLY TO NGP SOFTWARE INC.'S REPLY TO ARISTOTLE INTERNATIONAL INC'S OPPOSITION TO NGP'S MOTION TO COMPEL**

Plaintiff Aristotle International, Inc. ("Aristotle") hereby files this surreply to Defendant NGP Software Inc.'s ("NGP's") Reply to Aristotle International Inc's Opposition to NGP's Motion to Compel. Defendant's Reply raises new issues and asserts new facts that require Plaintiff's response and rebuttal.

**INTRODUCTION**

Defendant's advertisements contain such claims as "We only work with Democrats"; "NGP serves only Democrats and their allies"; and "NGP seeks to be the responsible, dedicated partners of our clients and our common goal: Victorious Democrats". *See* Amended Complaint at ¶12 and 13; Answer at ¶12 and 13.  Plaintiff's Amended Complaint alleges that these and other similar claims are literally false, material, and likely to damage Plaintiff. Such claims concern the nature of Defendant's "commercial activities", and not the nature of any of Defendant's "goods or services".  Plaintiff seeks only injunctive relief, not damages.

Defendant currently admits on its website that one reason "people use NGP" is that "we work only for Democrats and their allies". *See* Opposition, Exhibit 5. Defendant also has widely circulated a 2004 *Wall Street Journal* article whose principal thesis is that partisanship has allowed competitors to "take business away from Aristotle." *See* Opposition, Exhibits 2, 3 and 4. Thus, Defendant is now in the untenable position of having to argue that Defendant's own current advertising and the *Wall Street Journal* article circulated by Defendant are both untrue, and that partisanship is *not* a reason that "people use NGP".

In this effort to disprove its own admissions, Defendant seeks wholly irrelevant, but competitively sensitive, documents relating to software and services that are not in any way related to the subject of Plaintiff's narrowly-drawn Amended Complaint. Defendant's effort to obtain these documents relies on the following techniques, which are discussed in more detail throughout this pleading:

1. Defendant reads the "likely to be damaged" language out of the Lanham Act, and attempts to replace it with a "proof of actual injury" standard. Contrary to all legal precedent, *Defendant argues that Plaintiff must wait until it can prove harm has already occurred before a court can enter an injunction to prevent likely harm*.

2. Defendant continues to ignore the fact that the complaint in this case addresses NGP's advertising concerning the "commercial activities" of the parties, and not the features of their software and services.

3. In three document requests addressed by its Motion to Compel, Defendant seeks entirely irrelevant documents concerning a feature of Plaintiff's software that involves access to Federal Election Commission ("FEC") data, and that Defendant claims is illegal . In both its Motion to Compel and its Reply, Defendant has concealed from the court the fact that Defendant's owner filed an FEC complaint against Plaintiff in 2004 over the legality of this precise

2

software feature. As Defendant must have known before filing its Motion to Compel, such discovery is entirely improper. Any such FEC proceeding is confidential by federal statute. More importantly, the law of this Circuit prevents Defendant from even raising the issue of the software feature's legality for adjudication in a Lanham Act action until the FEC has issued a final ruling on Defendant's 2004 complaint.

## LITERAL FALSITY

On August 4, 2006, Defendant's National Account Executive, James Noble testified that he does *not* consider "a Political Action Committee that gives more than 80% of its contributions to Republicans to be a Democratic ally". *See* Deposition of James Noble, Exhibit 1, at 41. This candid testimony confirms what would seem to be a self-evident proposition for a reasonable person. Examples of Defendant's clientele that make more than 85% of their political contributions to Republican candidates are set forth on Exhibits 2-4.[1] On August 14, 2006, Plaintiff filed an Amended Complaint in which a good faith effort was made to narrow the issues and discovery in this case, including alleging only the "literal falsity" of Defendant's Democrat-only advertising.[2]

However, in a preamble to its "Argument" in the Reply, Defendant has proffered a new, tortured definition of "Democratic allies" that not only contradicts Mr. Noble's testimony, but also

---

[1] These include clients that purchase Defendant's software directly from NGP or through NGP's partnership that sells to "right leaning" organizations on a "private label". *See* Opposition, Exhibit 6 (filed under seal). The percentages of contributions to Republicans are even higher if donations to Republican Party committees and leadership PACs are included along with donations to Republican candidates.

[2] The Lanham Act applies to advertising that is "literally false", as well as to advertising that is "literally true, but likely to mislead consumers". *Riggs Inv. Mgmt. Corp. v. Columbia Partners,* 966 F.Supp. 1250, 1267-68 (D.D.C. 1997). Where "literal" falsity is shown for the first Lanham Act element, then proof of "actual or likely deception" (the second element under the Lanham Act) is not necessary. *Id.* at 1268-69. Accordingly, the need to conduct additional discovery on the issue of whether Defendant's partisanship claims are actually or likely deceptive would not be necessary.

3

certainly has never been disclosed to the public. The new definition would allow NGP even to sell to Republicans, and still maintain that it "literally" sells only to Democrats and to Democratic allies. As NGP attempts to explain it: "NGP has always considered the term "allies" as used at its website to mean *entities that ... sometimes associate with Democrats*". *See* Reply at 3. In other words, under this definition, NGP can sell to staunch Republican allies who heavily support Republican causes and contribute accordingly, as long as these same Republican allies *sometimes associate with Democrats* – and Defendant's advertising still would be "literally" true.

Defendant's tortured definition of "Democratic allies" was introduced into this case after Mr. Noble's deposition, after Plaintiff narrowed the complaint to "literal falsity", and after Defendant produced in discovery its ongoing partnership agreement with another company for the express purpose of selling to "right-leaning" organizations. *See* Opposition, Exhibits 6 and 7 (exhibits filed under seal).

To the extent that Defendant is determined to assert under oath that NGP has *always* considered the term Democratic "allies" to mean any entities that *"sometimes associate with Democrats"*, Plaintiff may be forced to again amend its complaint to re-instate its original allegation that some of the statements identified therein are also misleading, if not literally false. This will require Plaintiff to prove the additional Lanham Act element that some of the advertising claims in question are "actually or likely deceptive".[3] Although Plaintiff might then have an additional step in proving the first Lanham Act element (that Defendant's advertising is "false or

---

[3] Proof of "actual or likely deception" may be attained in two ways: a) by testing the reaction of consumers as to the deceptiveness of the language defendants have used, or b) by showing that defendants understood their promotional materials to be improper but continued to disseminate the materials anyway. *See Riggs, supra*, at 1269. Here, Mr. Noble's candid admission – that those who direct more than 80% of their political contributions to Democrats cannot in his opinion be considered Democratic allies – already goes a long way to proving that Defendant understands that its Democrat-only advertising is false and deceptive.

misleading"), this does not change any other legal standards of proof or relate to any of the discovery that Defendant seeks.

## ARGUMENT

### Request No. 1

Request No. 1 asks that Aristotle produce "all of Aristotle's customer feedback or survey information, and all of Aristotle's communications from and to customers, concerning NGP's software or services." Plaintiff has already agreed to provide Defendant with all such information as it relates to partisanship.

Defendant claims that all of the requested information is "critical" to dispute the "materiality" of its partisanship claims. But the *only* issue with respect to the materiality of NGP's "Democrat-only" claim is whether the claim has "*some effect on consumers' purchasing decisions*". See 3 McCarthy on Trademarks and Unfair Competition, §27:35 at 27-54 (emphasis added)(citations omitted). See Opposition at 4-5.

Defendant's Reply does not acknowledge, address, or attempt to rebut this definition of "materiality". Of course, other factors about the software and services such as price and quality, obviously figure into all customer decisions. But, incredibly, to this day, Defendant still claims at its own website that partisanship is a reason its customers select NGP. *See* Opposition, Exhibit 5. At the same time, Defendant purports to need consumer surveys from Plaintiff that do not ask about partisanship, and that are over two years old, *in order to prove that the claims NGP currently makes on its own website about partisanship are false.* If there is no effect on consumers from partisanship claims, Defendant's continued proclamation to the contrary requires some explanation. Certainly, this conduct calls into question the *bona fides* of Defendant's Request No. 1.

Defendant's attempt to rewrite the extremely damaging admissions of its sales representative, James Noble, on this point also bears particular attention. Defendant first denigrates Mr. Noble's experience by referring to him parenthetically as "a new employee at NGP", despite the fact that he has been with the company since August 2005, and has sold directly against Aristotle. Mr. Noble admitted that being able to claim that NGP was Democrat-only had given him an "advantage over Aristotle in a sales situation"[4] This is the definition of "materiality".

Defendant's Reply attempts to dismiss this admission as "speculation", but Mr. Noble's admission is actually the same claim made by NGP at its website, in *The Wall Street Journal*, and in the writings of NGP's President about why partisanship is important. *See* Opposition, Exhibits 2, 5, and 9. This is not "speculation". This is, in fact, the NGP company mantra, that "partisanship" is one of the reasons "people use NGP".

Defendant further suggests that somehow it is necessary for Aristotle to demonstrate that its "prices, quality, and service" have approached NGP in the eyes of the consuming public [presumably the consuming public of Democrats only]. Reply at 6. Defendant's logic is difficult to follow. But even assuming *arguendo* that Defendant is correct in that Aristotle must make some showing that it is accepted by Democrats in the marketplace, this concern is easily satisfied by identifying a sample of representative Democratic clients that use Aristotle's software and not

---

[4] *Question: …For purposes of this next question, have you ever felt that being able to say that NGP was Democrat only gave you some advantage over Aristotle in a sales situation?*

*A:   Like I said -- I said no but then I'll couch it with an individual probably does feel comfortable that they are working with fellow Democrats and committed Democrats. **So yes, there is a level of comfort that they probably receive or feel because we do work with Democrats only.***

Noble Depo. at 53(Opposition, Exhibit 1)  (emphasis added)

NGP's. It can also be satisfied by providing NGP with the names of those customers who left NGP and became Aristotle customers. Aristotle can provide both. Such proof is, *ipso facto*, proof that Aristotle's software is accepted by Democrats in the marketplace.

Defendant clearly does not have any *litigation* need whatsoever to review Aristotle's old surveys that do not ask about partisanship. It defies belief that such consumer surveys designed in early 2004 could be "critical to NGP's defense" to disprove the marketing claim that currently sits on NGP's own website in October 2006, unambiguously asserting that partisanship *is* a factor in NGP customers' decisions.

Granting all the requested discovery for the alleged purpose of disproving Defendant's own current marketing claims about the materiality of partisanship would constitute an abuse of even the most liberal standards. This would simply allow a fishing expedition into irrelevant documents that Defendant desires to see for purely competitive reasons.

**Request No. 8:**

Request No. 8 asks Aristotle to produce "all documents that show any of the Democrats, Republicans, and others you assisted through your software and services, for the last four election cycles (2000, 2002, 2004, and 2006). In lieu of producing the documents responsive to this request, you may provide a list of the names and addresses of each person or entity you assisted." Aristotle objected on relevance grounds.

Defendant's entire argument under Request No. 8 is that "proof of injury" is a necessary element of Plaintiff's case. Reply at 8. Defendant seeks Aristotle's entire customer list for six years, purportedly to show that Aristotle "has suffered no reasonable or cognizable injury" from Defendant's false advertising. *Id.* Defendant claims it will show this lack of injury by analyzing whether Aristotle's sales to Democrats have gone up or down. *Id*. (Defendant does not even make any effort to justify its request for the Republicans on Aristotle's customer list).

7

Defendant's argument is a complete perversion of the case law. It seeks to write out of the Lanham Act the provision that a cause of action lies for "any person who believes that he or she … is likely to be damaged" by false advertising. In its Opposition, Plaintiff has set forth the relevant case law, the legal standards, and the copious evidence of objective facts supporting a reasonable belief of likely injury. *See* Opposition at Part III, pp. 6-8. Despite Defendant's continued misreading of the law, proof that injury has already occurred is not required.

The standard for injunctive relief under the Lanham Act only requires proof of likely injury. *See Riggs Inv. Mgmt. Corp. v. Columbia Partners,* 966 F. Supp. 1250, 1272 (D.D.C. 1997). *See also Warner-Lambert v. Breathasure*, 204 F.3d 87, 92 (3d Cir. 2000). (In cases of injunction, §43 [of the Lanham Act] may be asserted upon showing likelihood of damage, without awaiting the actuality"). Defendant's claim that it is entitled to Plaintiff's entire customer lists for both parties for six years, purportedly in order to rebut that any "actual harm" has occurred, is simply incorrect as a matter of law. Proof of actual injury is not an element of this case.

**Request No. 11**

Request No. 11 asks Aristotle to produce "[a]ll marketing and promotional materials, and other documents, concerning the promotion or marketing of your software or services." Although such documents are irrelevant to proof that Defendant's partisanship claims are false, Aristotle has agreed to provide advertising documents that relate to NGP.

In attempting to invoke its "unclean hands" defense as a basis for discovering all of these materials for the past six years, Defendant's Reply identifies only three subjects:

1. *An advertising reference at Aristotle's website to "FEC-approved" software*.

    Aristotle will produce the documents relating to such approval.

2. *Advertising of a software feature utilizing Federal Election Commission data.*

8

The details of a specific software feature have no "immediate and necessary relation" to the claim that Plaintiff has brought before this court to enjoin Defendant's false "Democrat-only" advertising. *See Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 245 (1933) (unclean hands requires an "unconscionable act" by a party, where such act has an "immediate and necessary relation" to the equity that the party seeks in respect of the matter in litigation.)

Moreover, Defendant fails to inform the court that it has previously filed a complaint with the Federal Election Commission asking that agency to adjudicate whether Aristotle's conduct with respect to this software feature actually does violate the election laws. This is a crucial omission in Defendant's Reply, as it is improper for the court even to consider the Defendant's allegation about this feature under the Lanham Act unless and until the FEC has ruled in Defendant's favor on its FEC complaint. *See Dial A Car v. Transportation Inc.,* 82 F.3d 484 (D.C. Cir. 1996) ("Most importantly, the court explicitly rejected 'the theory that it is appropriate for a court in a Lanham Act case to determine preemptively how a federal administrative agency will interpret and enforce its own regulations."), *quoting Sandoz Pharmaceuticals Corp. v. Richardson-Vicks*, 902 F.2d 222, 231 (3d Cir 1990).

As this component of Request No. 11 also is addressed in Defendant's Reply concerning Request No. 24, please see the discussion of Request No. 24, *infra*, at 12-14.

3.  *Advertising that NGP users are switching to Aristotle*

Aristotle will provide the names of NGP's former clients who have switched to Aristotle software.

Finally, Defendant also states that Aristotle's marketing materials are relevant to see how Aristotle "deals with the 'partisanship' issue". Reply at 11. To the extent that Aristotle's marketing materials might refer to partisanship, they will be produced. Defendant's Motion to Compel and

Defendant's Reply articulate no other basis to provide further documents pursuant to Request 11 under any theory.

**Request No. 16**

Request No. 16 asks that Aristotle produce "all documents that mention NGP or Pearlman". Without conceding the potential relevance of all such documents, Aristotle agreed to produce documents to the extent they relate to NGP's false advertising; Aristotle advertising about NGP, communications with or by NGP or Pearlman; communications concerning this litigation; and Aristotle's comments on use of FEC Commission Records.

Aristotle has not sought from NGP all documents mentioning Aristotle or its owners. Yet Defendant's Reply reiterates NGP's clear desire that this litigation be turned into an unrestrained fishing expedition into all internal Aristotle documents covering the years of past and present competition between the parties on the features of their "software and services", no matter how far removed from the issues in the case. Except with respect to Defendant's overbroad request to obtain irrelevant documents involving every aspect of such competition and all of Plaintiff's trade secret software research and development, the documents Plaintiff has agreed to produce are responsive to Defendant's articulated needs.

Defendant seeks additional, competitively sensitive information solely for the purpose of competitive mischief. Plaintiff further relies on the arguments set forth in its Opposition to address this very serious concern. *See* Opposition at 13-16.

**Request No. 18:**

Request No. 18 asks that Aristotle produce "all documents relating to complaints from customers concerning software or services Aristotle has provided to them, from January 1, 2000 to the present." Aristotle has objected to this request on the ground that it seeks information that is

irrelevant and the production of which is not reasonably calculated to lead to discovery of admissible evidence.

Defendant's entire discussion in its Reply concerning Request No 18 simply repeats the legally erroneous claim that it needs the requested documents to show that Aristotle has not suffered any injury. As discussed more fully in Aristotle's Opposition, the standard of proof for the injunction Plaintiff seeks is not "actual injury".

Defendant's argument is a subterfuge, and Defendant seeks this information solely for the purpose of competitive mischief. Plaintiff relies on the arguments previously set forth in its Opposition to address this very serious concern with respect to Request No. 18. *See* Opposition at 16. *See also* discussion of Request 8, *infra*, at 7-8.

**Request No. 19**

Request No. 19 asks that Aristotle "produce all documents relating to communications from you to third parties, including but not limited to the Federal Election Commission, in which you have mentioned or referred to NGP." Aristotle agreed to produce such documents that constitute Aristotle advertising that refers to NGP, communications concerning the lawsuit, and comments on the use of Federal Election Commission records. Aristotle also will produce all such communications relating to partisanship.

Defendant's Reply echoes its Motion to Compel about *Forbes* magazine. Defendant is entitled to all such communications with anyone concerning the lawsuit, as Plaintiff has already agreed. With publication of the *Wall Street Journal* feature article in 2004, the relationship between the parties and the effect of vendor partisanship became a matter of public interest. For example, Plaintiff also was recently asked about this litigation by a reporter from *Vanity Fair* who is writing a story about Plaintiff's president. Those written and oral exchanges will also be disclosed pursuant to Plaintiff's prior agreement to disclose all such communications.

11

With respect to the FEC, Plaintiff has agreed to provide the public comments it has filed with the FEC. Beyond that, NGP has no legal right to further information about the administrative proceeding it commenced with the FEC in 2004. *See* discussion of Request 24, *infra,* at 12-14.

To the extent this request seeks additional information related to the many years of competition between the parties, but unrelated to partisanship, the request is overbroad for purposes of this narrowly pleaded false advertising case about Defendant's Democrat-only claims. Plaintiff otherwise relies on the arguments in its Opposition to the extent that Defendant's Reply simply repeats its earlier arguments concerning Request No. 19. *See* Opposition at 16-18.

**Request No. 24**

Request No. 24 asks that Aristotle produce "all documents relating to Aristotle's sale of information relating to individuals and campaign contributors Aristotle obtained from the Federal Election Commission's public records." Aristotle has objected to this request on the ground that it seeks information that is irrelevant and the production of which is not reasonably calculated to lead to discovery of admissible evidence.

Defendant's Reply makes clear that the real reason it seeks this information is because NGP believes that the software feature involving FEC data is "illegal", and therefore somehow relates to "unclean hands". But the requested information is irrelevant to an unclean hands defense because it specifically concerns one of Plaintiff's software features and has nothing whatsoever to do with the false advertising claim that Plaintiff has brought before this court for adjudication concerning the issue of partisanship. See *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 245 (1933) (unclean hands requires an "unconscionable act" by a party, where such act has an "immediate and necessary relation" to the equity that the party seeks in respect of the matter in litigation.)

Moreover, even if there were such an "immediate and necessary relation", Defendant does not even have the right to place its claim of "illegality" before this court because the issue of legality has not been resolved by the Federal Election Commission. For reasons Defendant should explain, Defendant has concealed from this Court the material fact that Defendant has already sought relief on this very point from the FEC, the agency charged with interpreting the laws and conduct in question. Defendant sought to challenge the legality of Plaintiff's software feature in 2004 by filing an FEC complaint against Aristotle. The progress, or lack of progress, in any FEC proceeding following the filing of a complaint is completely confidential under 2 U.S.C. 437 (g), as Defendant is well aware. Having failed to achieve a ruling of illegality from the FEC, Defendant now asks this court to usurp the FEC's jurisdiction and to enforce NGP's preferred interpretation of the law. But Defendant's attempts to have this court supplant the judgment of the Federal Election Commission and circumvent the very proceeding NGP commenced when it filed its FEC complaint is prohibited by the law of this Circuit.

In *Dial A Car v. Transportation Inc.,* 82 F.3d 484 (D.C. Cir. 1996), the plaintiff alleged that the defendant's advertising claim about its right to engage in certain transportation activity was false and misleading, because Plaintiff believed the activity was prohibited by a D.C. regulation. The district court held that it was not clear that the rule applied to the defendant's services. On appeal, the D.C. Circuit stated that the question should not even be addressed until the agency charged with interpreting the order in question had ruled on it:

> We need not resolve this question of statutory construction, however, because no matter which view is right, there is no dispute that such question is within the jurisdiction of the DC Taxicab Commission. There is also no dispute that the Commission has not addressed in an adjudication or other formal ruling, whether appellee's provision of Blue car services using regular taxicabs does indeed violate Order No. 4. <u>Thus it appears that appellant is simply using the Lanham Act to enforce its preferred interpretation of order No. 4 instead of adjudicating the issue before the Commission….</u>[W]e hold that, at a minimum, there must be a

13

>clear and unambiguous statement from the Taxicab Commission regarding appellee's status before a Lanham Act claim can be entertained.

*Dial –A-Car, supra*, 82 F.3d at 488-89. *See also Sandoz, supra,* 902 F.2d at 231*(*"court explicitly rejected "the theory that it is appropriate for a court in a Lanham Act case to determine preemptively how a federal administrative agency will interpret and enforce its own regulations")*(quoted in Dial A Car, supra,* 82 F.3d at 489). *See also* discussion of Request 11, *supra,* at 8-9.

Defendant's demand for information concerning a software feature that NGP feels is "illegal" must therefore be denied. The information sought is irrelevant and not reasonably calculated to lead to discovery of admissible evidence with respect to "unclean hands". And without a formal FEC ruling on Defendant's complaint about the legality of Aristotle's software feature, the holding of *Dial-A-Car* mandates that the court cannot even entertain NGP's claim concerning its subjective opinion of any alleged illegality.

Request No. 24 has nothing to do with this lawsuit. Defendant's concealment from the court of the FEC complaint filed by NGP belies the types of techniques that NGP is willing to employ in the discovery process to obtain competitively useful information to which Defendant is not validly entitled. Defendant's Request No. 24 is yet another subterfuge, forbidden by the law of this Circuit, and must not be permitted to succeed.

Respectfully submitted,

_/s/_____
J. Blair Richardson, Esq. (DC Bar No. 385482)
Blair.Richardson@aristotle.com
7440 Chummley Court
Falls Church, Virginia 22043
Telephone:    (703) 846-0078
Facsimile:     703-846-0576
Counsel to Plaintiff

_____/s/_____
Robert L. Bredhoff, Esq. (DC Bar No. 338103)
RBredhoff@steinmitchell.com
David U. Fierst, Esq. (DC Bar No. 912899)
DFierst@steinmitchell.com
STEIN, MITCHELL & MEZINES, L.L.P.
1100 Connecticut Avenue, N.W.
Suite 1100
Washington, D.C. 20036
Telephone:    (202) 737-7777
Facsimile:    (202) 296-8312 (fax)
Counsel to Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on this 12th day of October, 2006, a copy of the foregoing **PLAINTIFF'S SURREPLY TO NGP SOFTWARE INC.'S REPLY TO ARISTOTLE INTERNATIONAL INC'S OPPOSITION TO NGP'S MOTION TO COMPEL** was served electronically via the court's PACER system upon:

Eric L. Yaffe, Esq.
Eric.yaffe@gpmlaw.com
Iris Figueroa Rosario, Esq.
Iris.Rosario@gpmlaw.com
GRAY, PLANT, MOOTY, MOOTY & BENNETT, PA
2600 Virginia Avenue, NW, Suite 1111
Washington, DC 20037
Telephone: 202-295-2200
Facsimile: 202-295-2250

Attorneys for Defendant NGP Software, Inc.

\_\_\_\_\_/s/_____ _____
J. Blair Richardson