**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ARISTOTLE INTERNATIONAL, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action No. 1:05CV01700 |
| ) | |
| NGP SOFTWARE, INC., ) | |
| ) | |
| Defendant. ) | |

**COUNTERCLAIM FOR INJUNCTIVE RELIEF**

Counter-plaintiff NGP Software, Inc. ("NGP"), by and through its attorneys, for its Counterclaim against Counter-defendant Aristotle International, Inc. ("Aristotle"), alleges as follows:

**INTRODUCTION**

1. This Counterclaim is an action for false and deceptive advertising in violation of § 43 of the Lanham Act, 15 U.S.C. § 1125. Aristotle has knowingly created, published, and distributed patently false, deceptive, and misleading information and advertising about NGP's campaign software products and services and its own software products and services. Aristotle has specifically targeted NGP's customers and other users of campaign software and repeatedly published to them deceptive information designed to mislead them into selecting Aristotle's products and developing a false impression of NGP. Without the requested relief, this conduct will continue, causing irreparable injury to NGP and to the public generally.

2. Aristotle's false advertising campaign, and purported comparative advertisements, have disparaged NGP's trademark and have influenced and will influence the public's perception of NGP and the buying decisions of those in need of campaign software based on false, deceptive, and misleading information about the quality of NGP's and Aristotle's products and

services. This Counterclaim seeks permanent injunctive relief, corrective action, costs and attorneys' fees, and such other relief as may be appropriate.

## THE PARTIES

3.  Counter-plaintiff NGP is a District of Columbia corporation with its principal place of business at 1101 Vermont Avenue, NW, Suite 710, Washington, DC. NGP was incorporated in January 1997 and since that time has enjoyed significant growth in the campaign software industry. NGP has become the leading national software and technology consulting firm serving Democrats and their allies. NGP has helped Democrats through consulting, custom database solutions, and political software. More than two-thirds of all Democrats in the United States House of Representative and United States Senate, among other politicians and political organizations, use NGP's software.

4.  Counter-Defendant Aristotle is a Delaware corporation with its principal place of business at 205 Pennsylvania Avenue, SE, Washington, DC 20003. Aristotle was formed in 1983 and represents itself as a non-partisan provider of political software products and related services. Based on annual revenue, Aristotle is more than three times the size of NGP.

## JURISDICTION AND VENUE

5.  This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 & 1367.

6.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b). Defendants reside in and/or conduct business in this District. A substantial part of the events giving rise to this action occurred in this District, and the majority of the subject property is located herein.

## THE FACTS GIVING RISE TO THIS COUNTERCLAIM

### Aristotle's Response to NGP's Success In The Political Software Marketplace

7.  In or about the year 1999, Aristotle began losing high profile clients to NGP.

8. Aristotle records reveal that in 2001 and 2002 alone, at least six United States Senators and twelve members of the United States House of Representatives switched from Aristotle to NGP. In 2003, an off-election year, the Maryland Democratic Party, two more members of Congress, and a member of the Georgia State Senate switched from Aristotle's products to NGP's products. Upon information and belief, over fifty (50) federal Democratic candidates and party organizations have switched from Aristotle to NGP over the years. Many other Democrats have chosen NGP over Aristotle when buying campaign software for the first time.

9. According to Aristotle's own records, by no later than 2002, Aristotle discovered that clients began choosing NGP's products and services over its products and services for a variety of reasons, including:

1. NGP's software and technical support cost as much as 50% less than Aristotle's;
2. NGP's product was easier to use; and
3. NGP's upgrades were downloadable.

10. In response to NGP's increase in market share, Aristotle specifically targeted NGP and NGP's clients in an effort to obtain more information about NGP's products and the reasons that Democrats preferred them.

11. For years, Aristotle has been aware of complaints by its current and former clients about its products and services, particularly its technical support department.

12. In January 2004, Aristotle surveyed 50 of its customers who had called its technical support department. Thirty percent of the customers stated that the technical support department did not satisfactorily resolve their issues and many of them complained about the delay in Aristotle's response to their calls.

13. Aristotle concluded that it was losing many of its customers to NGP because of among other things, technical support problems and the greater ease with which customers were able to use NGP's software.

14. Aristotle commissioned another study to obtain more information from campaign software customers. Stat One Research interviewed Aristotle customers, and other users, in April and May of 2004, for the purpose of gauging customer satisfaction. Stat One's findings were consistent with Aristotle's prior survey. Customers continued to express complaints about Aristotle's technical support department.

15. The survey results also revealed that the average customer satisfaction rating for NGP's customers was higher than for Aristotle's customers. Seventy-six percent (76%) of NGP's customers rated it an "8" to "10" (of 10) while only sixty-six percent (66%) of Aristotle's customers' rated it in that same range. The specifics, by category, were even more revealing about the differences in customer satisfaction. For "knowledge - tech support," NGP received an average rating of 9.5 to Aristotle's 8.6. In the category of "quick access - support," NGP received an average rating of 9.5 to Aristotle's 7.6. There was also a significant disparity in customers' satisfaction with the price of the products. NGP's average rating on cost was 8.1 and Aristotle's was 6.8.

16. This and similar information educated Aristotle about NGP's products, services, and customers and helped Aristotle to understand how favorably the marketplace viewed NGP and the reasons why it did so.

**Aristotle's False and Misleading Representations About NGP**

17.   In September 2004, Aristotle commissioned Stat One Research to conduct another survey of Aristotle and NGP customers. By telephone, Stat One contacted customers and asked each one the same nineteen (19) questions.

18.   Through this "push poll" survey, Aristotle made false and misleading representations about NGP to customers and the public to give a false impression about the quality of NGP's products and services. The false and misleading nature is best evidenced by questions 17 and 18. Stat One made the following statements and asked the following questions (the questions were drafted by Aristotle):

> We would like to test your reaction to two statements. For each, please tell me how valuable or important the information is, or would be, in your decision on which campaign software company to use. The first is an Aristotle customer quote:
>
> Q17. "Our campaign made the decision to switch from NGP to Aristotle because of reliability issues and glitches in NGP's program. Aristotle's Campaign Manager is more intuitive, easier to learn and is accompanied by a professional user manual. Aristotle's customer service is extremely good and I frequently receive pro-active calls from my representative. I would definitely recommend Aristotle to other Democratic candidates."
>
> How valuable is that information, if you were to read it in a trade Publication or other advertising?
>
> Rating (5=very valuable and 1= not at all valuable) _____
>
> Q18. "The Federal Election Commission voted in August to [sic] unanimously to reject a request by software vendor NGP to modify their software to access contribution information from the FEC. This feature, already incorporated into Aristotle software, allows users to see how much contributors have given to other campaigns, information that is useful for compliance and fundraising purposes."
>
> How important is this development in your decision to remain with NGP software or to switch to Aristotle after the election? Please use 1 to 5, where 5 = very important and 1 = not at all important.
>
> Rating _____

19.     These "questions," posed to targeted consumers, were designed to mislead and confuse the purchasing public about the quality of NGP's products and services, influence purchasing decisions, injure NGP's reputation in the marketplace, cause customers to stop using NGP, and gain an unfair advantage in the marketplace.

20.     Specifically, the false and misleading nature of Question 17, and its preface, misrepresented the quality of NGP's software and services. Aristotle attempted to create the false impression that customers were switching from NGP to Aristotle. However, their own internal documents show that as of that time only *one* (1) customer had ever done so (while many had switched from Aristotle to NGP). The question also misleads the customer to believe that NGP's product is inferior. The "question" suggests that NGP has "glitches" and "reliability issues," when Aristotle knew, from its own surveys during the same time frame, that the prevailing customer opinion was to the contrary. The "question" further wrongfully misleads customers by suggesting that Aristotle's program is "more intuitive," "easier to learn," and that NGP does not have a "professional user manual." Aristotle also attempted to mislead the customers into believing that its "customer service" is considered "extremely good" and, by implication, NGP's is inferior. These intentional misrepresentations are contradicted by Aristotle's knowledge of customers' criticisms of its products and opinions about the strengths of NGP's product and services at the very time the survey was conducted. Aristotle used the survey as an instrument to attack NGP, not to find out what it already knew – customers who had used NGP generally believed it to be a superior product backed by superior customer support.

21.     The misleading nature of these representations was patently obvious to Aristotle and some of the customers surveyed. Customers expressed their disagreement with the contentions by commenting: "I don't believe it – my experience has been the opposite;" "I'd

6

need to personally know where it is coming from and I've never had any glitches with NGP;" and "I'd laugh [if I were to read it in a trade publication or other advertising], it's not true." Other customers, however, relied on the misleading "question" and stated they would place a high value on the content of the statement. They believed it was important to their decision-making. NGP's reputation and goodwill were irreparably injured by the dissemination of this false and misleading information which Aristotle caused to enter interstate commerce.

      22.     In Question 18, Aristotle attempted to confuse and mislead customers into believing that NGP had acted inappropriately by contacting the FEC about proposed modifications of its software and suggested that the information should prompt a switch to Aristotle. The underlying premise of the question was that NGP had engaged in underhanded tactics. However, there was nothing improper or illegal about NGP seeking out the FEC's opinion -- especially concerning activity already undertaken by Aristotle. Customer comments revealed that they were confused and even persuaded by the "question," with at least one commenting that NGP's proposal was "illegal." The false perception that NGP acted improperly irreparably injured NGP's reputation and goodwill.

**Aristotle's False and Misleading Advertising**

      23.     In further support of its efforts to tarnish NGP's reputation in the marketplace, Aristotle is also responsible for national advertisements and marketing materials that contain false and misleading information about NGP which Aristotle caused to enter interstate commerce. Since 2004, Aristotle has published numerous print and internet ads comparing its products and services with NGP's products and services. Three such publications are appended to this Counterclaim as Exhibits A, B, and C.

24. Exhibit A is a two page publication. The first page has numerous false and misleading representations. First, the quote from the "former NGP user," the same quote from Question 17 of the September 2004 Survey, is reprinted word for word in Exhibit A. Second, the publication states the "Top 6 Reasons NGP *Users* are Switching to Aristotle." (emphasis added.) Upon information and belief, only one (1) NGP user had ever switched to Aristotle prior to the publication. The representation that NGP "users" were moving to Aristotle is misleading and creates the false impression that it is commonplace for people who have used NGP software to be dissatisfied with it and switch to Aristotle. The representation is particularly misleading when juxtaposed with the quote from the "former NGP user" who complained of "glitches" and "reliability issues." In addition, at least three of the "Top 6 Reasons" identified are false and misleading.

25. One of the purported reasons set forth in Exhibit A for customers switching from NGP to Aristotle is that Aristotle provides "Faster Support." This representation is false and misleading. Having a toll-free number and 24 hour telephone support does not mean that Aristotle has "faster support." Aristotle's own survey results concluded that NGP provides the same services to its customers and provides them faster and more effectively. Aristotle also represents that it has: "Smarter Support. Only Aristotle employs FEC Compliance Experts who have worked at the FEC." It is misleading to contend that FEC experience makes one "smarter" and, even if true, NGP also employs and works closely with compliance experts. The representation is false. Finally, Aristotle states that it has a "Professional Manual" to mislead customers into believing that NGP does not, which, too, is false and misleading.

26. The second page of the publication makes false and misleading statements about NGP's request to the FEC. Aristotle characterizes NGP's request as a "scheme" "to circumvent

the law" and contends that NGP sought to engage in "illegal political activity." The clear but wrongful purpose of these published statements was for Aristotle to gain an advantage over NGP by giving the marketplace the false impression that NGP acted improperly. Indeed, upon information and belief, Aristotle made these false and misleading statements despite the fact that NGP was merely asking the FEC whether it could legally do what Aristotle was already doing.

27. Exhibit B is another Aristotle publication containing false and misleading advertising. Upon information and belief it was disseminated in 2006. The document is entitled "Political Data Management Analysis" and contains a table and information directly comparing Aristotle to NGP. Aristotle contends that NGP, unlike Aristotle, (1) does not have instruction manuals or online help, (2) does not have direct credit card processing, and (2) costs "approximately the same" as Aristotle's software. None of these claims are true. Aristotle knew, or recklessly disregarded the truth, when it made these comparisons and published them. For example, in a 2006 internal email with the subject line "Aristotle vs. Competitors," Aristotle employee Bret Garwood told employee Brian Williams that he would question the representation that NGP did "credit card processing through a 3rd party" and advised Williams to "leave it open."

28. Exhibit C is Aristotle's advertisement in the February 2007 issue of the publication "Campaigns & Elections." Aristotle's representations and direct comparisons to NGP are false and misleading in several ways. The page is titled "FEC Docs Reveal Huge Fundraising Advantage Tied to Software" and subtitled "Democrats and Republicans raised up to $324,620.04 more by using Aristotle." The false and misleading premise of the advertisement is that there is a causal relationship between the use of Aristotle's campaign software and the monies raised by House campaigns. Essentially, according to the advertisement, Aristotle's

software, itself, is responsible for generating increased fundraising.  This is simply not true -- as Aristotle well-knew when it published this advertisement.

29. In addition to the titles themselves, the information contained in the advertisement is misleading and false.  The center of the ad contains three stacks of coins.  Aristotle's stack of coins is on the left, which is more than twice as high as NGP's stack in the middle, and more than four times as high as Complete Campaigns' stack on the right.  The graphic is designed to create the wrongful, visual misperception that Aristotle's clients raised more than twice as much money as NGP's in the 2006 election cycle.

30. The advertisement is also misleading and confusing to the recipients because it fails to disclose critical information about fundraising, the products, and NGP.  Regardless of the lack of causal connection between software use and dollars raised, NGP and Aristotle serve different demographics.  For example, Aristotle customers included Democrats and Republicans.  The advertisement does not disclose that NGP only serviced Democrats.  Moreover, upon information and belief, the monies raised by Democratic candidates using NGP's software exceeded the amount raised by Democratic candidates using Aristotle's software, by a significant margin.

31. Aristotle's false and misleading statements and advertisements misrepresent NGP's products and services, misrepresent how NGP's and Aristotle's products and services compare to each other, and were published for the material purpose of misleading consumers.  The primary target audience for the surveys and advertisements are people who use and make buying decisions for campaign software.

32. As a result, NGP suffered irreparable injury to its reputation and goodwill.

**The Harm to the General Public and NGP**

33. NGP has been and continues to be harmed as a direct and foreseeable result of Aristotle's misrepresentations. These misrepresentations are intentional and strive to create the wrongful perception among customers and users of campaign software products and services that NGP has inferior products and services to Aristotle. Upon information and belief, Aristotle continues to cause to be disseminated to the present day, in interstate commerce, the false, deceptive, and misleading representations and advertisements as have been described herein. The continuing harm suffered by NGP as a result of Aristotle's conduct includes an irreparable loss of goodwill for which money damages cannot adequately compensate NGP.

34. These misrepresentations have also harmed and will continue to harm the public generally by influencing their buying choices and tainting their perceptions of NGP, based on the false and misleading information published by Aristotle in surveys and advertisements.

## COUNT I

**(Section 43(a) of the Lanham Act – Unfair Competition and False Advertising)**

35. NGP incorporates by reference the allegations set forth in paragraphs 1 through 34 of this Counterclaim as though fully set forth herein.

36. Aristotle's false and/or misleading descriptions or representations or implications of fact concerning the nature, characteristics, and qualities of NGP's products and services are material and in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

37. Aristotle's false and/or misleading descriptions or representations or implications of fact concerning the nature, characteristics, and qualities of NGP's products and services in comparison to the nature, characteristics, and qualities of Aristotle's products and services are material and in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

38. Aristotle's conduct is willful, deliberate, intentional, and in bad faith.

39.     NGP has been and will likely continue to be irreparably damaged by Aristotle's false and misleading representations.

40.     Aristotle's false and misleading representations about NGP are likely to deceive purchasers of campaign software products and services and cause them to purchase Aristotle's products and services. These purchases shift customers and revenue from NGP to Aristotle.

41.     NGP has suffered, and unless Aristotle is enjoined will likely continue to suffer, irreparable injury to, among other things, its reputation and goodwill by reason of the false and misleading claims made by Aristotle about NGP.

## PRAYER FOR RELIEF

WHEREFORE, NGP respectfully requests that this Court enter judgment and orders:

A.      Declaring that Aristotle has violated section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a);

B.      Permanently enjoining Aristotle, its respective officers, directors, employees, agents, subsidiaries, representatives, distributors, dealers, parents, related companies, and all persons in active concert or participation with any of them from engaging in any sales and marketing communications implying or making any representation the same as or similar to those identified in this Counterclaim;

C.      Requiring Aristotle to cease and desist immediately from publishing the advertisements and marketing materials challenged in this Counterclaim and any other similar advertisements;

D.      Requiring Aristotle to take corrective action necessary to correct the false and misleading marketing materials and advertisements identified in this Counterclaim including, but not limited to:

      1.  ordering that Aristotle communicate with all customers and potential customers to whom the false and misleading marketing materials and advertisements were delivered, explaining the false and misleading nature of such advertisements and marketing materials;

      2.  ordering that Aristotle seek to publish a letter in Campaigns & Elections magazine explaining the false and misleading nature of the advertisement that appeared in that publication; and

      3.  ordering that Aristotle provide an explanation on its website of the false and misleading nature of the advertisments and marketing materials.

    E.    Awarding NGP its costs and attorneys' fees incurred in connection with this Counterclaim as permitted under the Lanham Act;

    F.    Granting NGP such other and further relief as this Court may deem just and proper.

                          Respectfully submitted,

                          /s/ Eric L. Yaffe
                          Eric L. Yaffe (DC Bar No. 439750)
                            Eric.Yaffe@gpmlaw.com
                          Iris Figueroa Rosario (DC Bar No. 477009)
                            Iris.Rosario@gpmlaw.com
                          GRAY, PLANT, MOOTY, MOOTY
                            & BENNETT, P.A.
                          2600 Virginia Avenue, N.W., Suite 1111
                          Washington, D.C.  20037
                          Telephone:    (202) 295-2200
                          Facsimile:    (202) 295-2250

Date:  March 26, 2007                  Attorneys for NGP Software, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of March, 2007, a copy of the foregoing **NGP SOFTWARE, INC.'S COUNTERCLAIM FOR INJUNCTIVE RELIEF** was sent electronically via the Court's PACER system, by facsimile, and by first-class mail, postage prepaid, to the following:

Robert L. Bredhoff, Esq. (DC Bar No. 338103)
   Rbredhoff@steinmitchell.com
David U. Fierst, Esq. (DC Bar No. 912899)
   Dfierst@steinmitchell.com
Stein, Mitchell & Mezines L.L.P.
1100 Connecticut Avenue, N.W.
Washington, D.C.  20036
Telephone:     (202) 737-7777
Facsimile:     (202) 296-8312

J. Blair Richardson, Esq. (DC Bar No. 385482)
   Blair.Richardson@aristotle.com
2582 Holly Manor Drive
Falls Church, Virginia  22043
Telephone:     (703) 846-0078
Facsimile:     (703) 846-0576

Attorneys for Plaintiff Aristotle International, Inc.


                                        /s/ Eric L. Yaffe_____


GP:2078547 v1